## Abner R. McKinney v. John Armstrong and Henry O. Tonsor.

1. STATUTE OF FRAUDS—*When a Promise is Within the Statute.*—In order that a promise can be held to be within the statute of frauds, it is essential that there be a binding and subsisting obligation or liability to the promisee to which the promise in question is collateral. It must be something beneficial to the one party or disadvantageous to the other, or to persons whom the parties represent.

2. CONSIDERATION—*What is Sufficient as.*—The act of one stockholder in furnishing money from his private funds to another stockholder of a mining company for the immediate relief of such company and to keep it " a going concern " is a sufficient consideration to support a promise to repay the same.

3. VERDICTS—*Form Held Sufficient.*—A verdict in the following form, viz.: " We, the jury, find the issues for the plaintiffs and assess their damages at three hundred and seventy-five dollars, and interest thereon at five per cent per annum from the date at which the money is shown by the evidence to have been borrowed, making four hundred and twenty-one dollars and twenty-five cents," is sufficient for the entry of a judgment for the sum of four hundred and twenty-one dollars and twenty-five cents.

4. SAME—*Power of Courts to Have Verdicts Put in Form.*—A trial court of record has ample power to have its verdicts amended and put in proper form so as to speak the intent of the jury.

Assumpsit, for money paid, etc. Appeal from the Circuit Court of Madison County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the February term, 1901. Affirmed. Opinion filed September 4, 1901.

HENRY S. BAKER, attorney for appellant.

DUNNEGAN & LEVERETT, attorneys for appellees.

MR. JUSTICE BIGELOW delivered the opinion of the court.

The several parties to this suit reside at Alton, in this State, and with one L. T. Castle and one H. T. McKinney, comprise the entire stockholders of the Alton Mining and Milling Company, a corporation organized under the laws of the Territory of New Mexico, for the purpose of mining gold.

The principal office of the company was at Albuquerque, in the Territory.

McKinney v. Armstrong.

In June, 1898, appellee Armstrong was president of the company, and L. T. Castle was its general manager; the latter, with H. T. McKinney, was in charge of the mine, and the corporation became indebted to its workmen about $1,000, and had not the ready means to pay its liabilities. Thereupon appellee Armstrong advanced of his own money $300, for that purpose, and appellees together borrowed of one McGinnis $750, giving their note therefor, due one year after date, with seven per cent interest, and this money was also used in canceling the indebtedness of the mining company. When the note fell due it was, at the solicitation of appellant and appellees, renewed for another year by McGinnis at six per cent interest, and at the end of that year the note was paid off by appellees.

The contention of appellees is, that at the time the $750 was borrowed of McGinnis, appellant promised appellees that he would pay them one-half of the sum so borrowed, with the interest accrued thereon, and accordingly, after appellees paid their note, they sued appellant in an action of assumpsit on the common counts and filed a copy of their account sued on, charging appellant with $350, borrowed and expended by plaintiffs for defendant; and with a like sum borrowed and advanced to the defendant by the plaintiffs on June 15, 1898, at defendant's request.

A trial by jury resulted in a verdict for appellees for the full amount of their claim, on which, after denying appellant's motion for a new trial, the court rendered judgment and the case comes here on the appeal of defendant below.

The principal grounds on which appellant relies for a reversal of the judgment are tersely stated by his counsel as follows:

"The defendant claims that the suit is in effect a litigation to recover upon the note introduced in evidence and seeks to hold the defendant responsible for the debt of another, and that as the promise is not in writing as required by the statute of frauds, plaintiffs can not recover.

In addition thereto, the defendant denies that any such promise was ever made, and that there was no consideration for any such promise, even should the testimony of the

two witnesses be held to outweigh the evidence of the defendant alone. The defendant also contends that the verdict of the jury is improper and indefinite, and that the court erred in entering a judgment upon such verdict."

The contention " that the suit is in effect a litigation to recover upon the note introduced in evidence," is an erroneous view to be taken of the matter. There is no count in the declaration declaring on the note executed by appellees to McGinnis. It is true the note was introduced in evidence, not for the purpose of recovering upon it, but for the purpose of sustaining in part, at least, appellees' contention that they had borrowed of McGinnis $750 to be used in paying the liabilities of the mining and milling company, and had subsequently paid the note with the interest accrued upon it, which was a part of their contract with appellant, that he should repay appellees one half of the money borrowed, with interest.

When the note was executed, the money borrowed on it was used in paying the debts of the mining company, and when it was paid, the indebtedness, which the note was but the evidence of, was completely wiped out.

How appellees, by suing appellant, were seeking " to hold the defendant responsible for the debt of another," as stated by counsel, is not easily understood, and counsel have not undertaken to remove the cloud that prevents us from seeing that section 1 of the statute of frauds and perjuries has any application to a case of the character of this. That section reads as follows :

" That no action shall be brought * * * whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person * * * unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

Counsel for appellant, in his brief, quotes from the opinion in Eddy v. Robarts, 17 Ill. 505, and concedes that:

" In considering whether the promise is within the stat-

ute the main question is whether it is original and independent or collateral to and dependent upon the debt or liability of another."

If the promise was, in fact, made by appellant as contended by appellees, to what "debt or liability" was it collateral to? The promise was not made to McGinnis to pay appellees' debt to him, and it was not made to the creditors of the mining company, as seems to be assumed by appellant, if we understand him.

In the case of Resseter v. Waterman, 151 Ill. 169, the court said:

" In order that the promise can be held to be within the statute, it is essential that there be a binding and subsisting obligation or liability to the promisee to which the promise is collateral; in other words, that the party for whom the promise has been made must be liable to the party to whom it is made."

Tested by this rule it is apparent that the promise, if any was made, was made by appellant to appellees, and was therefore an original promise, and hence was not within the statute requiring it to be in writing.

But it is insisted by appellant that even if the promise was original, it was without consideration and therefore without binding force. The rule of the common law, that there must be a consideration to uphold a contract, is not disputed by any one; but what may be regarded as a good consideration to sustain a promise, sometimes becomes a controverted question of law. As each case must stand on its individual facts, always varying, perhaps no better general statement of what will support a promise can be more readily found than that contained in Sec. 61 of Bishop on Contracts (enlarged edition), viz.:

" It must be something beneficial to the one party, or disadvantageous to the other, or to persons whom the parties represent.

The fact seems to be uncontradicted, that appellant and appellees, with L. T. Castle and H. T. McKinney, were the owners of the entire capital stock of the Alton Mining and Milling Company, but in exactly what proportions does

not appear, though a fair inference to be drawn from the evidence is, that the immediate parties to this suit were the principal stockholders and .persons interested in the mine, and in the credit of the company.   Certainly appellant was a heavy stockholder and was interested in preserving the company in a going condition, and this, it appears, could not be done unless money was immediately raised to pay the indebtedness of the company to its miners.

That by the raising of the money which, with the $300 of appellee Armstrong's private fund, was used to relieve the immediate necessities of the mining company, and keep it a going concern, appellant received a benefit that he would not have otherwise received, seems too clear to require further elucidation.

But should it be conceded that no benefit inured to appellant in consequence of the transaction in borrowing the money from McGinnis, yet if the money was borrowed by appellees, relying on the promise or guaranty of appellant to pay appellees one-half of the sum borrowed, with interest, there is no room for doubting that the transaction was disadvantageous to appellees, and this of itself was a sufficient consideration to support the promise of appellant, if one was made.

It is urged by appellant that no promise was made by him to pay to appellee one-half of the money borrowed of McGinnis with interest, for which this suit was brought. The testimony in regard to the matter was confined entirely to the parties to the case.

Appellees each testified unequivocally to the making of the promise, while appellant's testimony was halting, uncertain, and to the effect that he did not remember making such a promise.

There were other facts and circumstances testified to by appellant as well as by appellees, which tended to substantiate the testimony of appellees in regard to the promise, and as the question whether the promise was in fact made, was for the jury to determine, their verdict should not be disturbed.

The only remaining contention of appellant is, " that the

McKinney v. Armstrong.

verdict of the jury is improper and indefinite, and that the court erred in entering a judgment upon such verdict."

The verdict, as shown by the judgment entered upon it, is as follows:

" We, the jury, find the issues for the plaintiffs and assess their damages at three hundred and seventy-five dollars and interest thereon at five per cent per annum from the date at which the money is shown by the evidence to have been borrowed, making four hundred and twenty-one dollars and seventy-five cents."

We are unable to find anything improper or indefinite in the verdict. Counsel for appellant, however, says in his argument, that the verdict, when returned by the jury, did not contain the last eleven words as they now appear in it, and that he made an oral motion to quash the verdict but no record was made of the motion or the ruling on it.

We can not take notice of or consider any matter not contained in the record. It may be the court amended the verdict by adding the eleven words, but if it did so, the presumption, in the absence of anything to the contrary, is that the amendment was made in the presence of the jury, and that they assented to the verdict as amended. And besides, the note to McGinnis is a part of the record, and we are not prepared to hold that, under section 56 of the practice act (See Hurd's R. S. 1899, page 1212), the court could not look to the note in directing the clerk to put the verdict in form, to make it speak the clear intent of the jury, and this is all that was done, as claimed by appellant's counsel.

The jury, under the section of the practice act above referred to, might have returned an oral verdict, when the court, or the clerk under the direction of the court, would necessarily have been required to reduce it to writing.

As to the power of the courts to have verdicts amended and put in form, so as to speak the intent of the jury, see Chittenden v. Evans, 48 Ill. 52; Clapp v. Martin, 33 Ill. App. 438, and cases there cited.

We find no error in the record and the judgment is affirmed.