No. 3-05-0299

_____

filed July 7, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| ROSEWOOD CARE CENTER, INC., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, ) | Tazewell County, Illinois, | |
| | ) | |
| v. | ) | |
| | ) | No. 03-L-174 |
| CATERPILLAR, INC., | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | Honorable |
| (Enloe Drugs, LLC., Plaintiff; | ) | Stuart P. Borden, |
| Betty Jo Cook, Defendant). | )Judge, Presiding. | |

_____

JUSTICE HOLDRIDGE delivered the opinion of the court:

_____

Plaintiff Rosewood Care Center (Rosewood) filed suit against Caterpillar, Inc.,
seeking payment for services it provided to Caterpillar employee Betty Jo Cook while she
was a patient at Rosewood. Plaintiff sought reimbursement based on Caterpillar's alleged
promise to pay. Caterpillar filed a motion to dismiss, arguing that the Statute of Frauds
barred Rosewood's suit. The trial court found that the Statute of Frauds did indeed bar
Rosewood's suit and dismissed the complaint. We hold that, under the current state of the
law, the Statute of Frauds does not bar Rosewood's suit. We therefor reverse and remand
to the circuit court for further proceedings.

Betty Jo Cook was employed by Caterpillar. In October 2001, she alleged that she suffered an injury while on the job. She then filed a claim for workers' compensation benefits against Caterpillar.

Cook's injury required hospitalization and nursing home care. According to Rosewood's complaint, Caterpillar contacted Rosewood and sought Cook's admission to the skilled nursing facility on a managed care (fixed rate) basis. Through it's agent, HSM Management Services, Rosewood refused to admit Cook on that basis. On January 10, 2002, Dr. Norma Just, a physician in charge of the medical care related to workers' compensation claims of Caterpillar employees, requested that Cook be admitted to Rosewood. Rosewood claims that during negotiations, Dr. Just promised that Caterpillar would pay the cost of Cook's care in full. Dr. Just's statements and assurances were not reduced to writing.

On that same day, HSM faxed a letter to Dr. Just confirming Dr. Just's authorization of Cook's admission. The letter stated that Caterpillar agreed to four weeks of treatment and that any future evaluation of Cook's length of stay would be determined by her treating Rosewood physician. Dr. Just signed the letter and returned it on January 11, 2002.

Rosewood admitted Cook to its skilled nursing facility on January 30, 2002. Cook remained at Rosewood and received treatment and care through June 13, 2002. During her stay, Cook incurred medical and pharmaceutical charges in the amount of $181,857. Rosewood demanded that Caterpillar pay Cook's expenses, and Caterpillar refused.

Rosewood filed suit against Cook and Caterpillar. Among other things, the complaint alleged that Caterpillar authorized Cook's treatment and that it admitted Cook in reliance on Caterpillar's promise to pay for Cook's expenses while she was at the facility.

2

Therefore, Caterpillar was responsible for the various charges Cook incurred during her stay. Rosewood sought recovery from Caterpillar based on theories of breach of contract, promissory estoppel and quantum meruit. Caterpillar moved to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2004)). Among other arguments, Caterpillar claimed that the statute of frauds barred Rosewood's claims since the alleged agreement to pay Cook's bills was not in writing. The trial court found that the statute applied and dismissed all three counts against Caterpillar pursuant to section 2-619 of the Code.

STANDARD OF REVIEW

A section 2-619 motion to dismiss admits all well-pleaded facts in the complaint together with all reasonable inferences that can be drawn from those facts in the plaintiff's favor (Redwood v. Lierman, 331 Ill. App. 3d 1073 (2002)), and it raises other defects or defenses that bar the claim (Krilich v. American National Bank & Trust Co. of Chicago, 334 Ill. App. 3d 563 (2002)). The trial court must consider whether the defendant presented facts constituting an affirmative defense that would defeat the plaintiff's cause of action. Prodromos v. Poulos, 202 Ill. App. 3d 1024 (1990). We review de novo a dismissal under section 2-619. Prodromos v. Howard Savings Bank, 295 Ill. App. 3d 470 (1998).

ANALYSIS

I. Statute of Frauds

The Frauds Act (statute of frauds) (740 ILCS 80/1 (West 2004)) provides that, absent certain exceptions, an oral promise to answer for the debt of another is unenforceable unless in writing.

"No action shall be brought, *** whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person ***, unless the promise or agreement upon which such an action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."  740 ILCS 80/1 (West 2004).

In this case, both parties agree that the faxed letter which was signed by Dr. Just and returned to Rosewood on January 11, 2002, is insufficient to support the promise Rosewood seeks to enforce.  Thus, the question we must consider is whether Caterpillar's oral promise to pay Cook's debt constitutes a special promise to answer for the debt of another within the meaning of the statue of frauds and is therefore unenforceable.

Rosewood contends that the statute of frauds does not bar the enforcement of Caterpillar's promise to pay Cook's expenses because it was not a "special" promise under the statute.  First, Rosewood argues that there was no pre-existing debt, that is, Caterpillar made its promise to Rosewood before Rosewood provided goods and services to Cook.  Second, Rosewood maintains that Caterpillar's promise to pay for Cook's stay was not a special promise because it promoted Caterpillar's own interests in satisfying its obligation under the Workers' Compensation Act (Act) (820 ILCS 305/8(a) (West 2004)).

In the late 1800's, the Illinois supreme court held in two separate cases that the statute of frauds was only applicable if the promise to pay the debt of another was made after the obligation of the principal debtor had been incurred.  Williams v. Corbet, 28 Ill. 262 (1862); Hartley Brothers v. Varner, 88 Ill. 561 (1878).  Oral promises made prior to the obligation of the principal debtor had been incurred were enforceable.  In the instant matter,

4

Rosewood correctly notes that Caterpillar made its promise to pay Cook's expenses before she was admitted and before she incurred any debt. Thus, Rosewood maintains, the statute of frauds is inapplicable to the instant matter under Williams and Hartley Brothers. We agree.

In Williams, Corbert agreed to deliver cattle to Caldwell, but only after Williams made an oral promise to Corbert to pay Corbert for the cattle. Corbert delivered the cattle to Caldwell. When Williams refused payment, Corbert brought suit against Williams who plead the statute of frauds as a defense. Our supreme court held that the statute of frauds did not protect Williams, reasoning:

> "That [Williams] was the person to whom the credit was given, is clear, and that fact makes the undertaking original and not collateral, and therefore not within the statute of frauds. The whole was one single bargain, and [Williams'] promise was incorporated into the contract and became an essential part of it. It is not at all like a case where the contract is executed, and the promise to pay made after the debt was created; such a promise in such a case must, to be binding, be in writing."
> Williams, 28 Ill. at 263.

In Hartley Brothers, the brothers operated a general store. Reubottom owed $8.00 on his account and the brothers refused to extend any more credit to Reubottom. Varner then told the brothers that, if they would extend further credit to Reubottom, he (Varner) would see to it that the brothers were paid. When Reubottom's account reached $160.91 the brothers demanded payment from Varner, who refused. Citing its decision in Williams,

our supreme court again held that the statute of frauds did not bar recovery. <u>Hartley Brothers</u>, 88 Ill. at 563.

<u>Williams</u> and <u>Hartley Brothers</u> together stand directly for the proposition that the statute of frauds is applicable, in matters of surety, only where the promise to pay the debt of another was made after the obligation of the principal debtor had been incurred. See also, <u>Ricci v. Reed</u>, 169 Ill. App. 3d 1062 (1988) (for statute of frauds to apply, there must be an existing debt at the time of the alleged guarantor's promise); and <u>Publishers Advertising Associates, Inc. v. Wessell Co., Inc.</u>, 747 F.2d 1076, 1080 (7th Cir. 1980) (in applying the Illinois statute of frauds, for the statute to be applicable, there must be an existing debt at the time of the alleged guarantor's assurances).

It is well-settled that when our supreme court has declared law on any point, only it can modify or overrule its previous decisions, and all lower courts are bound to follow supreme court precedent until such precedent is changed by the supreme court. See generally, <u>DuPage Couty Airport Authority v. Department of Revenue</u>, 358 Ill. App. 3d 476 (2005) and cases cited therein. Thus, the question squarely before this court is whether the holding in <u>Willaims</u> and <u>Hartley Brothers</u> have been modified or overruled by our supreme court.

Our review of supreme court precedent leads us to conclude that <u>Williams</u> and <u>Hartley Brothers</u> are still good law. Our research revealed no supreme court decision overruling or modifying the holding articulated in those two decisions. Several decisions of the appellate court would seem to be at odds with <u>Williams</u> and <u>Hartley Brothers</u>, but to the extent they conflict with supreme court precedent, they cannot be followed. See, <u>Brown & Shinitzky Chartered v. Dentinger</u>, 118 Ill. App. 3d 517 (1983); <u>Swartzberg v. Dreszner</u>, 107

6

Ill. App. 3d 318 (1982). We also recognize that the holding articulated in <u>Williams</u> and <u>Hartley Brothers</u> has been abandoned by other jurisdictions and commentators. See, <u>Kossick v. United Fruit Co.</u>, 166 F. Supp. 571 (S.D.N.Y. 1958), <u>judgment rev'd on other grounds</u>, 365 U.S. 731 (1981); See also, Restatement (Second) of Contracts section 116, Reporter's Note, at 301 (1981)(section stating that enforceable promise to pay debt of another must be in writing based upon former section 184, but limitation in former section 184 to an antecedent debt is eliminated). However, until our supreme court abandons the holding articulated in <u>Williams</u> and <u>Hartley Brothers</u>, we are bound to follow it. Accordingly, we find that the promise falls outside the statute of frauds, and the trial court was in error in dismissing the complaint on that basis.

## II. Quantum Meruit and Promissory Estoppel

Rosewood also claims that the trial court erred in dismissing its quantum meruit and promissory estoppel counts. We note that these counts were dismissed based only upon the statute of frauds. Under Illinois law, the statute of frauds acts to bar all claims at law and in equity. <u>Edens View Realty & Inventory Inc., v. Heritage Enterprises, Inc.</u>, 87 Ill. App. 3d 480 (1980). Promissory estoppel cannot be applied to allow recovery where the statute of frauds bars the contract claim. <u>Peoria Associates Ltd. Partnership v. Best Buy Co.</u>, 995 F. Supp. 823 (N.D. Ill. 1997); <u>Dickens v. Quincy College Corp.</u>, 245 Ill. App. 3d 1055 (1993). Since the statute of frauds does not apply to this case, the trial court erred in dismissing Rosewood's remaining counts.

## CONCLUSION

The judgment of the circuit court of Tazewell County is reversed and remanded for further proceedings consistent with this ruling.

7

Reversed and remanded.

BARRY, J., concurs, and LYTTON, J., specially concurs.

JUSTICE LYTTON specially concurs:

_____

I.

I write separately to discuss the general and widely recognized trend to abandon the pre-existing debt requirement. Since the decisions in <u>Williams v. Corbet</u>, 28 Ill. 262 (1862) and <u>Hartley Brothers v. Varner</u>, 88 Ill. 561 (1878) were decided in the mid 1800's, the law on the applicability of the statute of frauds has seen significant change. As noted by the majority, today it is generally agreed that a "special promise" within the statute may be made prior to or simultaneously with the creation of the principal obligation, and may be offered as an inducement to the creditor to enter into a contract with the principal debtor. <u>Brown & Shinitzky Chartered v. Dentinger</u>, 118 Ill. App. 3d 517 (1983); <u>Evans v. Owens</u>, 30 Ill. App. 2d 114 (1961) (<u>citing</u> <u>Laughlin v. Dalton</u>, 200 Ill. App. 342 (1916)); 9 R. Lord, Williston on Contracts §22:14, at 276-77 (4th ed. 1999); but <u>cf</u>. <u>Publishers Advertising Associates, Inc.</u>, 747 F. 2d 1076, and <u>Ricci v. Reed</u>, 169 Ill. App. 3d 1062 (1988) (for statute of frauds to apply, there must be an existing debt at time of the alleged guarantor's promise).

The history of the concept of a preexisting debt, in itself, discloses that it is not a deep-rooted doctrine, but a legal device used at the turn of the 20th century to reach a desired conclusion or to avoid a seeming wrong. Restatement (Second) of Contracts §116,

8

Comment a, at 300 (1981). However, the language of the statute contains no preexisting debt requirement. It does not distinguish between an antecedent debt and a debt created subsequent to the promise. See 740 ILCS 80/1 (West 2004). Based on the statute's plain language, a promise to answer for the default or miscarriage of another comes within its purview without regard to the time when promise was made. Kossick v. United Fruit Co., 166 F. Supp. 571 (S.D.N.Y. 1958), judgment rev'd on other grounds, 365 U.S. 731 (1961); see also Restatement (Second) of Contracts §116, Reporter's Note, at 301 (1981) (section stating that enforceable promise to pay debt of another must be in writing is based on former §184, but limitation in former §184 to an antecedent debt is eliminated).

Furthermore, the policy underlying the statute of frauds urges the conclusion that its application should not be limited to cases in which the original debt preexisted the promise to pay it. The object of the statute is to require higher and more certain evidence to charge a third-party with a debt when that third party does not receive the substantial benefit of the transaction. The statute is meant to provide greater security against fraudulent demands which, if met, would discharge the original debtor. Eddy v. Roberts, 17 Ill. 505 (1856). Those protections and safeguards are necessary whether the promise was made "prior to or simultaneously with the creation of the principal debt," or "offered as an inducement to the creditor to enter into a contract with the debtor." See 9 R. Lord, Williston on Contracts §22:14, at 277 (4th ed. 1999). If anything, the promisor should be entitled to greater protection where the debt is incurred after the promise is made. Promisors of a preexisting debt are aware of the amount of debt and can prepare for the likelihood of liability. Promisors who agree to pay a debt that has yet to arise may be exposed to limitless liability. The timing of the promise should not limit the statute's application. I therefore

9

believe that Caterpillar's oral promise to pay should fall within the statute of frauds regardless of when it was made.

II.

Thus, I agree with <u>Brown & Shinitzky Chartered</u> that an oral contract to guarantee the debt of another violates the statute of frauds and is unenforceable unless it is founded upon a new and independent consideration passing between the newly contracting parties and independent of the underlying debt. <u>Brown & Shinitzky Chartered</u>, 118 Ill. App. 3d 517. However, determining whether an oral promise is a special promise within the statute or whether the promise is independent of the underlying debt is not easily accomplished.

Historically, courts adopted a basic test to analyze whether an oral promise to pay constituted a special promise within the Statute. If the promise was original and independent of a debt or liability of another person, it was not within the statute. If the promise was collateral, the statute applied. <u>McKinney v. Armstrong</u>, 97 Ill. App. 208 (1901); <u>Lake View Hospital Ass'n & Training School For Nurses v. Nicholson</u>, 202 Ill. App. 205 (1916). Only a collateral promise fell within the meaning of the term "special" promise as used in the Statute. <u>Bonner & Marshall Co. v. Hansell</u>, 189 Ill. App. 474 (1914).

The terms original and collateral do not appear anywhere in the statute and have been used by courts more as a convenient mode of expression rather than a meaningful interpretation. The use of these terms precedes the statute. They were part of the terminology applicable to a common law action of debt. <u>Bullen v. Morrison</u>, 98 Ill. App. 669 (1901). An original promise would give rise to an action of debt; "whereas a collateral promise, though it might be a binding contract upon which assumpsit would lie because a detriment had been incurred by the plaintiff at the defendant's request, could not be the

10

basis of debt." 9 R. Lord, Williston on Contracts §22:6, at 248 (4th ed. 1999). Using these terms in a statute of frauds analysis, while convenient, is not very helpful.

More recently, courts recognized the difficulty in determining whether a promise is original or collateral and have attempted to define a more useful test. See Publishers Advertising Associates, Inc., 747 F. 2d 1076; Swartzberg v. Dreszner, 107 Ill. App. 3d 318 (1982). Some Illinois appellate courts have noted that the question is to be determined "not from the particular words used, but from all of the circumstances of the transaction." Ricci, 169 Ill. App. 3d at 1066; Publishers Advertising Associates, Inc., 747 F. 2d at 1079.

Courts from other jurisdictions have stated that the intention of the parties controls and should be ascertained from the words of the promise and the situation of the parties, as well as all of the circumstances surrounding the transaction. Eilertsen v. Weber, 255 P. 2d 150 (Or. 1953); Landmark Savings Bank, F.S.B. v. Weaver-Bailey Contractors, Inc., 739 S.W.2d 166 (Ark. 1987).

Perhaps the most common test for distinguishing promises that fall within the statute is the "leading object" or "main purpose" rule. Swartzberg, 107 Ill. App. 3d 318; Power Entertainment, Inc. v. National Football League Properties, 151 F. 3d 247 (5th Cir. 1998); Restatement (Second) of Contracts §116 (1981); see also Clifford v. Luhring, 69 Ill. 201 (1873) (making an early, general reference to the application of the leading object test). Under the "leading object" rule, a promise to pay the debt of another falls within the statute of frauds unless the main purpose of the promisor is to gain some advantage, or promote some interest or purpose of his own, and not to become a mere guarantor or surety of another's debt. Swartzberg, 107 Ill. App. 3d 318. A slight or indirect possible advantage to promisors is insufficient to defeat the statute's application. The expected advantage must

11

justify the conclusion that the promisors' main purpose in making the promise is to advance their own interests. Restatement (Second) of Contracts §116, Comment b, at 300 (1981). In other words, unless promisors receive valuable consideration that moves directly to themselves, as distinguished from being benefitted by a consideration moving to the original debtor, the promise is within the statute. 9 R. Lord, Williston on Contracts §22:20 (4th ed. 1999); Murto v. McKnight, 28 Ill. App. 238 (1888); Emerson v. Slater, 63 U.S. 28 (1859). As a practical matter, a promisor's advantage must be served in a straightforward way in order for the leading object rule to apply. Graybar Electric Co. v. Sawyer, 485 A. 2d 1384 (Me. 1985).

While these various tests are all supported by authority, the leading object rule is the most meaningful and effective way of determining whether a promise is within the statute of frauds. I would follow the trend toward categorizing a promise as either collateral or original by application of the leading object rule. 9 R. Lord, Williston on Contracts §22:11, §22:20 (4th ed. 1999).

Rosewood argues that the statute of frauds does not apply in this case because the main purpose of Caterpillar's promise was to promote its own interests. Rosewood claims that Caterpillar received a direct, substantial benefit because the goods and services furnished by Rosewood met Caterpillar's statutory obligation under the Workers' Compensation Act to provide treatment required due to Cook's work related injury. See 820 ILCS 305/8(a) (West 2004)).

Under section 305/8(a) of the Act, employers are required to provide and pay for all the "necessary medical services" required, limited to that which is "reasonably required" to treat the "accidental injury." 820 ILCS 305/8(a) (West 2004). Rosewood's assumption that

12

Caterpillar is obligated to pay for Cook's services is based on two legal conclusions: first, that Cook suffered a work-related accidental injury; and second, that the services Cook received were necessary and reasonably required. However, Cook's workers compensation claim is still pending, and Caterpillar's obligation to pay for Cook's services is still in dispute. Any possible advantage to Caterpillar has not yet materialized and cannot defeat the statute's application.

Implicit in Rosewood's argument is that, in consideration for Caterpillar's payment, Rosewood could release Caterpillar from its obligation under the Act. However, Rosewood is legally incapable of providing such consideration. Cook, as the injured worker, is the only person entitled to receive the workers' compensation benefits, and the Act expressly prohibits the assignment of those payments. See 820 ILCS 305/21 (West 2004). Thus, no consideration would flow between Caterpillar and Rosewood.

Without sufficient consideration from Rosewood, it is difficult to conclude that Caterpillar's main purpose in making the oral agreement was to promote its own pecuniary interests. See generally Graybar Electric Co., 485 A. 2d 1384. Accordingly, the promise violates the statute of frauds and is unenforceable. Using this analysis, I would conclude that the trial court properly dismissed Rosewood's complaint.

III.

However, since our supreme court has not reexamined its analysis in Williams and Hartley Brothers since they were decided more than one hundred and twenty-five years ago, I must reluctantly agree with the majority. Under the current state of the law, the statute of frauds does not bar Rosewood's suit.

13