FIFTH DIVISION
December 22, 2006

No. 1-05-3588

| | | |
|---|---|---|
| BROWN, UDELL AND POMERANTZ, LTD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| FRANCES RYAN and SHARON McCOLLUM, as Co- | ) | Honorable |
| Executrixes of the Estate of Daniel McCollum, Deceased, | ) | Margaret Brennan, |
| | ) | Judge Presiding. |
| Defendants-Appellees | ) | |
| | ) | |
| (Charles Watson, Defendant). | ) | |

JUSTICE GALLAGHER delivered the opinion of the court:

This is an appeal from a grant of summary judgment that was based upon the Frauds Act

(740 ILCS 80/1 (West 2004)) (statute of frauds). We reverse and remand.

BACKGROUND

Plaintiff Brown, Udell & Pomerantz, Ltd. (BUP), is a law firm. This case arises from

BUP's claim for attorney fees incurred in representing defendant Charles Watson (Watson) in

litigation at the trial and appellate levels. In June 2000, BUP entered into a written agreement

with Watson to provide legal services to invalidate an ordinance enacted by the Village of Stone

Park prohibiting the possession of various video amusement devices. At the time, Watson was

the owner of The Deluxe Grill, in Stone Park, which had video amusement devices.

In July 2000, BUP filed pleadings in the circuit court of Cook County, Illinois, in Watson v. Stone Park, No. 00 CH 9639. Watson was the only named plaintiff. BUP sought and successfully obtained a temporary restraining order which prohibited Stone Park from enforcing its ordinance. The temporary restraining order was in place until July 2002. Ultimately, however, BUP lost in its attempt to invalidate the Village of Stone Park ordinance. The trial court dismissed the case, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615) (West 2000)), and the order was affirmed on appeal. *Watson v. Village of Stone Park*, 343 Ill. App. 3d 1300, 856 N.E.2d 695 (2003) (unpublished order under Supreme Court Rule 23). Watson has never made any payments to BUP for work performed on the ordinance case.

In December 2003, BUP filed a complaint against Watson, the estate of Daniel McCollum, (the Estate),[1] and Service Amusement Corporation (Service Amusement) seeking recovery for breach of contract for legal fees in the amount of $32,593.98. On April 1, 2004, BUP filed an amended verified complaint adding counts for *quantum meruit* and unjust enrichment against all three defendants.

Daniel McCollum (the decedent) died in July 2003. At the time of his death, the decedent was associated with Service Amusement. Although the decedent and Service Amusement made payments to BUP totaling $90,363.57, and BUP also received refunds for its expenses, apparently

---

[1]Initially the Estate was the named defendant. Because the Estate is not an entity that can be sued, BUP was permitted to add the actual defendants, Frances Ryan and Sharon McCollum, the co-executrixes of the Estate of Daniel McCollum.

no payments have been made to BUP since at least May 2003. Despite the fact that BUP had a written agreement with Watson only, BUP alleged that it had, prior to the decedent's death, performed legal services for both the decedent and Service Amusement based on oral agreements.

In its amended verified complaint, BUP alleged that Service Amusement, which provided the video amusement devices to The Deluxe Grill, received substantial revenues from these devices and that the decedent, in turn, personally received substantial revenues from Service Amusement. BUP alleged that, prior to its representation of Watson in the litigation, the decedent orally agreed to pay Watson's legal fees and that the decedent and Service Amusement were primarily responsible for all legal fees, costs and interest incurred by BUP in its attempt to invalidate the Stone Park ordinance. The only parties who witnessed the decedent's alleged oral promise were Watson and Udell. BUP claimed that the decedent made the oral promise to pay in June 2000, during a telephone call that took place between the decedent and Glenn Udell (Udell), a principal and shareholder of BUP, and again in BUP's office at a meeting that took place between the decedent, Udell and Watson. BUP also claimed that Udell specifically stated to Watson that although the decedent and Service Amusement had agreed to pay, Watson would be liable for all fees, costs and interest incurred by BUP if either the decedent or Service Amusement did not pay. Watson allegedly agreed to be responsible for the fees in the event that the decedent and Service Amusement did not pay. It is undisputed that BUP had no written agreement with either the decedent or Service Amusement for the legal services performed in connection with the Stone Park ordinance.

In May 2005, the Estate filed a motion for summary judgment based upon several

grounds, including the Dead-Man's Act (735 ILCS 5/8-201 (West 2002)) and the statute of frauds. On July 18, 2006, after full briefing and oral argument, the circuit court granted the Estate's motion for summary judgment based on the statute of frauds. On October 6, 2005, after full briefing and oral argument, the circuit court denied BUP's motion to reconsider and granted BUP's request for Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language. This timely appeal followed.

## ANALYSIS

Our standard of review is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 615 N.E.2d 736 (1993). A plaintiff who opposes summary judgment need not prove his case, but must provide some factual basis which could arguably result in a favorable judgment. *In re Estate of Sewart*, 236 Ill. App. 3d 1, 8, 602 N.E.2d 1277, 1281 (1991). On a motion for summary judgment, the court cannot consider any evidence that would be inadmissible at trial. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203-04, 665 N.E.2d 1379, 1385 (1996); *CCP Ltd. Partnership v. First Source Financial, Inc.*, ___ Ill. App. 3d ___, ___, 856 N.E.2d 492, 498 (2006); *Sameer v. Butt*, 343 Ill. App. 3d 78, 85, 796 N.E.2d 1063, 1068 (2003); *Wiszowaty v. Baumgard*, 257 Ill. App. 3d 812, 819, 629 N.E.2d 624 (1994). Thus, the party opposing summary judgment must produce some competent, *admissible* evidence which, if proved, would warrant entry of judgment for the opposing party. *Davis v. Times Mirror Magazines, Inc.*, 297 Ill. App. 3d 488, 494-95, 697 N.E.2d 380 (1998).

The trial court's decision to grant summary judgment was based solely upon the statute of frauds. BUP incorrectly asserts that the trial court "denied" summary judgment on the other

grounds raised by the Estate. The written order merely states the grounds upon which summary judgment was granted, and as the Estate notes, the trial court declined to rule upon the Estate's other theories. The record contains no transcript of the hearing. Thus, we must conclude that the court did not even address the other grounds.

BUP also incorrectly contends that the Estate had a duty to file a cross-appeal as to the other grounds that were supposedly "denied." This too is incorrect. Because orders denying summary judgment are interlocutory in nature, the denial of summary judgment is ordinarily not appealable. *In re Estate of Funk*, 221 Ill. 2d 30, 85, 849 N.E.2d 366, 397 (2006). In any event, there was no "denial" of summary judgment. Moreover, not only is our review *de novo*, but this court can affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the lower court relied on that ground. See, *e.g.*, *Home Insurance Company v. Cincinnati Insurance Company*, 213 Ill. 2d 307, 315, 821 N.E.2d 269, 275-76 (2004.)

The Frauds Act (740 ILCS 80/1 (West 2004)) provides as follows:

"No action shall be brought, whereby to charge any executor or administrator upon any special promise to answer any debt or damages out of his own estate, or whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made upon consideration of marriage, or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by

1-05-3588

the party to be charged therewith, or some other person thereunto by him lawfully authorized."740 ILCS 80/1 (West 2004).

The Estate, citing *Brown & Schinitzky Chartered v. Dentinger*, 118 Ill. App. 3d 517, 455 N.E.2d 128 (1983), argued in its motion for summary judgment that the promise to pay the debt of another must comply with the statute of frauds. Thus, the Estate contended that because BUP had no written agreement with the decedent to pay Watson's legal fees, its claim was barred by the statute of frauds. The trial court here granted summary judgment based on the statute of frauds.

BUP asserts, however, that the statute of frauds does not apply to oral promises made *prior to* the debt being incurred, *i.e.*, that there must be an *existing debt* at the time of the alleged guarantor's promise. BUP argues that *Brown* is inapposite because its agreement with the decedent was not a collateral promise to pay the debt of another. Instead, BUP, citing *Ricci v. Reed*, 169 Ill. App. 3d 1062, 523 N.E.2d 1218 (1988), and *Villareal v Metropolitan Bank & Trust Co.*, 277 Ill. App. 3d 188, 660 N.E.2d 69 (1995), asserts the decedent's promise was an "original and independent" promise that does not fall within the statute of frauds. It appears that BUP is correct.

Recently, this court decided that, despite many appellate court opinions to the contrary, the statute of frauds did not bar an oral promise to pay that was made *prior to* the obligation of the principal debtor. *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 733, 852 N.E.2d 540, 543 (2006), appeal allowed, No. 103212. The *Rosewood* court relied upon the precedent of the Illinois Supreme Court in two cases from the late 1800's, *Williams v. Corbet*, 28

6

Ill. 262 (1862), and *Hartley Brothers v. Varner*, 88 Ill. 561 (1878). The *Rosewood* court also cited with approval *Ricci v. Reed*, 169 Ill. App. 3d 1062, 523 N.E.2d 1218 (1988), and disagreed with *Brown & Schinitzky Chartered v. Dentinger*, 118 Ill. App. 3d 517, 455 N.E.2d 128 (1983). We do note, however, the view of the special concurrence in *Rosewood* discussing "the general and widely recognized trend to abandon the preexisting debt requirement." *Rosewood*, 366 Ill. App. 3d at 735, 852 N.E.2d at 545 (Lytton, J., specially concurring). Nonetheless, as discussed in *Rosewood*, the precedent of the Illinois Supreme Court is that "the statute of frauds [is] only applicable if the promise to pay the debt of another was made *after* the obligation of the principal debtor [has] been incurred." (Emphasis added.) *Rosewood*, 366 Ill. App. 3d at 733, 852 N.E.2d at 543. In the instant case, BUP does not allege that McCollum promised to pay Watson's debt *after* Watson's obligation was incurred. Instead, BUP alleges that McCollum's promise to pay was made contemporaneously with Watson's promise and was made *before* BUP performed, *i.e.*, *before* Watson's obligation was incurred. Thus, because this case does not involve a preexisting debt, we must hold that BUP's claim is not barred by the statute of frauds.

Nonetheless, assuming that the statute of frauds would not apply to the decedent's alleged promise, the Estate asserted *an additional ground* as to why it was entitled to summary judgment, namely, the Dead-Man's Act (735 ILCS 5/8-201 (West 2002)). The Estate contends that the Dead-Man's Act bars BUP's claim against the Estate regardless of whether the decedent allegedly made a "collateral" promise to pay Watson's debt or an "original and independent" promise to BUP.

The purpose of the Dead-Man's Act is to protect decedents' estates from fraudulent claims

7

and also to equalize the position of the parties with respect to giving testimony. *Gunn v Sobucki*, 216 Ill. 2d 602, 609, 837 N.E.2d 865, 869 (2005). The Dead-Man's Act provides, in relevant part, as follows:

> "In the trial of any action in which any party sues or defends as the representative
> of a deceased person or person under a legal disability, no adverse party or person
> directly interested shall be allowed to testify on his or her own behalf to any
> conversation or event which took place in the presence of the deceased * * *." 735
> ILCS 5/8–201 (West 2002).

The Dead-Man's Act bars only that evidence which the decedent could have refuted. *Gunn v Sobucki*, 216 Ill. 2d at 609, 837 N.E.2d at 869. The primary reason for the statutory exception is the supposed inability of the representative to oppose the statements of the adversary. *Van Meter v. Goldfarb*, 317 Ill. 620, 623, 148 N.E. 391, 392 (1925).

BUP, however, cites *Greenberger v. Catalfo*, 293 Ill. App. 3d 88, 687 N.E.2d 153 (1997), for the proposition that whether an agreement is collateral or original is always a question of fact that only a jury can decide. BUP also asserts, without citation to authority, that the Dead-Man's Act is applicable only to "a trial," and not to pleadings, and also contends that a trial court must "wait until trial" to determine whether a defendant will either "purposefully" or "accidentally" enter into the record testimony related to the decedent's statements or acts. It is apparently BUP's contention that the trial court must conduct a trial and see if the Estate "purposefully" or "accidentally" enters statements or acts of McCollum into the record, which

would then invoke an exception to the Dead-Man's Act.[2]

Contrary to BUP's assertions, its argument that the Dead-Man's Act is applicable only to "a trial" has already been rejected by this court and the Dead-Man's Act may be applied within the context of a summary judgment proceeding. *Groce v. South Chicago Community Hospital*, 282 Ill. App. 3d 1004, 1010, 669 N.E.2d 596, 600 (1996); *Rerack v. Lally*, 241 Ill. App. 3d 692, 694, 609 N.E.2d 727, 729 (1992).  As this court has explained: "[I]t strains logic to construe the Dead Man's Act in a manner that forces litigants to proceed to trial when it would be evident from an application of the Dead Man's Act, in the context of a summary judgment proceeding, that a litigant cannot prove his case." *Rerack*, 241 Ill. App. 3d at 694-95, 609 N.E.2d at 729.

This court has affirmed summary judgment where a plaintiff had no admissible proof to support her case after the trial court ruled that the Dead-Man's Act barred evidence of conversations with the decedent or acts performed in the presence of the decedent. *Kamberos v. Magnuson*, 156 Ill. App. 3d 800, 805, 510 N.E.2d 112, 115 (1987).  Nonetheless, the trial court here did not grant summary judgment based upon the Dead-Man's Act.  We decline to rule upon this ground that was never considered by the trial court.  Instead, we remand this matter to allow the trial court to further consider the Estate's motion for summary judgment, to determine

[2]This *exception* states as follows: "If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." 735 ILCS 5/8-201(a) (West 2002).

whether the Dead-Man's Act applies, and, if so, whether it bars the action.

For all of the foregoing reasons, we reverse the grant of summary judgment in favor of the Estate that was based upon the statute of frauds and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.