LANDMARK SAVINGS BANK, F.S.B. *v.* WEAVER-BAILEY CONTRACTORS, INC.

CA 87-170                                    739 S.W.2d 166

Court of Appeals of Arkansas
Division II
Opinion delivered November 11, 1987

*Perroni, Rauls & Looney,* by: *Stanley D. Rauls,* for appellant.

*Davidson Law Firm, Ltd.,* by: *Geoffrey B. Treece,* for appellee.

GEORGE K. CRACRAFT, Judge. Landmark Savings Bank, F.S.B., appeals from a decree of the chancery court of Garland County finding it liable to Weaver-Bailey Contractors, Inc., on a contract to pay Weaver-Bailey, a subcontractor, sums allegedly owed by the appellant directly to the general contractor. We find no error and affirm.

In 1985, Larry Carter began development of a condominium complex on lands owned by him in Hot Springs, Arkansas, and entered into an agreement with the appellant under which the appellant would advance sums of money to Carter as the construction of his project progressed. The debt secured by the lien on the project, would be retired out of the sales price of the condominium units when sold. Carter then entered into a contract with the appellee under which appellee was to furnish a portion of the materials and labor for the construction. The appellee was not a party to the financing contract entered into between Carter and appellant, and there was no initial contractual relationship between appellant and appellee. Donald Weaver, an employee of

the appellee, testified that he was initially informed that Jim Gray, senior vice-president and treasurer of the appellant bank, would be in charge of Carter's account and was the person he should contact. There was evidence that during the construction period appellee had reason on a number of occasions to contact the appellant with regard to financial matters. On at least one occasion when Carter defaulted in his payment to appellee under the subcontract, Donald Weaver contacted Gray on behalf of the appellee and discussed the matter with him. He testified that as a result of that conversation the appellee received a check made payable jointly to it and Carter in payment of its claim, and an assurance that additional joint checks would be made. In May of 1985, the project was completed and Carter was in default in his final payment to the appellee in an amount in excess of $70,000.00. Appellee perfected its materialman's lien on Carter's property to secure the payment of that amount. Weaver then again contacted Gray about the matter. According to Weaver, Gray informed him that the appellant was only obligated to advance Carter an additional sum of $38,000.00 but committed appellant to an agreement under which appellant would remit the remaining $38,000.00 due Carter directly to the appellee instead in exchange for a release of appellee's lien on the mortgage asset to that extent.

The appellant denied such an agreement, contending that the evidence did not establish that Gray had made such an agreement or that he was authorized to do so by the appellant. It is contended that, in any event, such an agreement would be void and unenforceable under the statute of frauds. The chancellor found all of the issues against the appellant and this appeal follows. We find no error in the chancellor's actions or findings and affirm the decree as entered.

■■ The appellant first contends that the evidence did not establish that the appellant had promised to make the payment of $38,000.00 directly to the appellee in exchange for its promise of a partial release of its materialman's lien. Whether such promises were exchanged are questions of fact for the trial court to resolve. Here, an agent of the appellee testified positively that such promises were exchanged between himself and Jim Gray, treasurer and senior vice-president of appellant. Gray was not as positive in his testimony but stated that he did not recall making

such a statement and did not believe that he had. He stated that he ordinarily would not have done so and that he was not authorized to make such an agreement. The trial court resolved this conflict in favor of the appellee on the basis of credibility, expressly finding that he attached greater weight to the testimony of Weaver than that of Gray. The findings of fact of a chancellor will not be disturbed on appeal unless clearly against a preponderance of the evidence, and since the question of a preponderance of the evidence turns largely on the credibility of the witnesses we will defer to the superior position of the chancellor in that regard. *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W.2d 404 (1985); ARCP 52(a).

The appellant next contends that, even if such an agreement was made, it was an oral undertaking to answer for the debt of another and void under the provisions of Ark. Stat. Ann. § 38-101 (Repl. 1962), which requires such agreements to be evidenced by a writing signed by the party sought to be charged. All oral undertakings to answer for the debt of another are not unenforceable under the statute of frauds. A promise by a third party to discharge a preexisting debt of another, without any new consideration or benefit passing to him, is a "collateral" understanding and unenforceable under the statute of frauds. However, notwithstanding the statute of frauds, such a contract is an "original" one and enforceable if founded on new consideration or benefit moving to the promisor. In determining whether the undertaking is collateral or original the court should consider the words of the promise, the situation of the parties, and all circumstances surrounding the transaction. This determination is ordinarily one of fact and not one of law. *Black Brothers Lumber Co.* v. *Varner*, 164 Ark. 103, 261 S.W. 312 (1924); *Barnett* v. *Hughey Auto Parts, Inc.*, 5 Ark. App. 1, 631 S.W.2d 623 (1982).

Consideration has been defined as any benefit conferred or agreed to be conferred upon a promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by a promisee other than that which he is lawfully bound to suffer. *McIlroy Bank & Trust Co.* v. *Comstock*, 13 Ark. App. 13, 678 S.W.2d 783 (1984). Here, appellant was allegedly obligated to Carter in the amount of $38,000.00. It had no obligation as such to appellee in any amount. Appellee's claim was against the lands of Carter on which the appellant held a

mortgage. At the time this agreement was made, there were no other liens on Carter's property. Some of the condominiums had been completed and were being advertised for sale. There was evidence that appellant would benefit by such sales by application of the proceeds against Carter's existing debt, thus reducing it.

Appellant argues that an agreement to partially release a lien while retaining a lien for the balance was giving up virtually nothing as consideration for the promise of the payment. Mere inadequacy of consideration will not void a contract. It has been said that adequacy is a matter for the parties to consider at the time the contract is made, and not for the courts at the time it is sought to be enforced. *See, e.g.*, 17 C.J.S. *Contracts* § 127 (1963); 17 Am.Jur.2d *Contracts* § 102 (1964). In *Bloodworth* v. *Booser*, 99 Ark. 238, 241, 138 S.W. 457, 458 (1911), our supreme court stated:

> In estimating the value of the thing as the consideration for a promise, there is a manifest distinction between property of a certain and determinate value, and things which have but a contingent or intermediate value. But, in any event, mere inadequacy of consideration is not sufficient to defeat a promise. It is sufficient that the consideration shall be of some value. It may only be slight value or such as could be of value to the party promising.

That the release was not a complete one is not controlling. The appellant promised to make the payment in exchange for a partial release, which might or might not make the lands more saleable. What is important is that appellant got that which is bargained for in exchange for its promise. We cannot conclude that the chancellor's finding that the undertaking was an original one based on valid consideration is clearly erroneous.

Appellant finally argues that the trial court erred in finding that Gray had authority to make the agreement. We do not agree. Although a number of definitions of apparent authority have been given, our supreme court has declared on a number of occasions that a principal is bound not only by the acts of an agent done under the principal's express authority, but also by those acts of a general agent which are within the apparent scope of his authority, whether they have been authorized or not, and even if they are contrary to express direction. The principal in such a case

is not only bound by the authority actually given to the general agent, but by the authority which the third person dealing with him has the right to believe has been given to him. *Southern Electrical Corp.* v. *Ashley-Chicot Electric Co-op, Inc.*, 220 Ark. 948, 251 S.W.2d 813 (1952). This rule does not conflict with the rule that one dealing with a mere agent is bound to ascertain the nature and extent of his authority and cannot trust the mere presumption of authority or assumption of it by the agent. *See Dixie Life & Accident Insurance Co.* v. *Hamm*, 233 Ark. 320, 344 S.W.2d 601 (1961). It has been held that one dealing with an admitted agent may presume in the absence of notice to the contrary that he was a general agent, clothed with authority coextensive with its apparent scope. *N. O. Nelson Manufacturing Co.* v. *Benjamine*, 189 Ark. 897, 75 S.W.2d 664 (1934).

Although there was evidence that Gray lacked express authority to enter into the agreement, the issue was whether under the circumstances Weaver had a right to believe that Gray had that authority. On conflicting evidence, the chancellor found that Gray was acting within the apparent scope of his authority in entering into the agreement. From our *de novo* review of the record, we cannot conclude that the chancellor's finding is clearly against a preponderance of the evidence.

Affirmed.

JENNINGS and COULSON, JJ., agree.