Maggie CAPEL, Individually and as Guardian of Tessa Capel,
*a Minor v.* ALLSTATE INSURANCE COMPANY;
Jim Faye General Enterprises, Inc., *a/k/a* Jim England Co., Inc.,
and Jim England, Individually

CA01-1305 77 S.W.3d 533

Court of Appeals of Arkansas
Division II
Opinion delivered June 5, 2002

28

*McHenry & McHenry Law Firm*, by: *Donna McHenry, Robert McHenry*, and *Connie Grace*, for appellants.

*Watts, Donovan & Tilley, P.A.*, by: *Richard N. Watts*, for appellee Allstate Insurance Company.

WENDELL L. GRIFFEN, Judge. Margaret Capel, individually and as mother and next friend of her daughter, Tessa Capel, appeals a Pulaski County circuit court award of summary judgment to appellee Allstate Insurance Company on her claims of negligence, indemnification and breach of express war-

ranty.[1] She contends that the award of summary judgment was inappropriate. We agree that material issues of fact exist as to appellant's claims regarding breach of an express warranty, indemnification, and negligence. Thus, we reverse and remand.

## Factual and Procedural History

Viewing the evidence in the light most favorable to appellant, the following events occurred. In early 1990, appellant sustained storm damage to the roof of her house, and contacted Allstate, the carrier of her homeowners insurance. An Allstate claims representative visited the house, investigated the damage, and provided appellant with a check to pay for the repairs. The claims representative also presented appellant with a list of six approved roofing contractors from which appellant could choose to repair her roof. The list was compiled by Allstate and included roofing contractors with whom Allstate had previously dealt in other roof repair jobs and recommended to its insureds.

Appellant ultimately chose Jim England as her roofing contractor. She alleged that the claims representative made specific promises and express warranties to her about England's competency, insurance, and bonding. She further alleged that she relied on these representations when she chose England and that Allstate promised to be responsible for any problems incurred from the work performed by England.

After the roof was repaired, appellant and her daughter suffered carbon monoxide poisoning, allegedly because the furnace exhaust pipe had been covered by the roofer. They underwent hospitalization and treatment in hyperbaric chambers. Appellant later learned that England was neither bonded nor insured. Consequently, appellant filed suit against Allstate on the grounds of express warranty, indemnification, negligent misrepresentation, and agency. The suit also alleged negligence against England.

---

[1] In two opinions, the circuit court granted summary judgment for Allstate on indemnification and negligence. Upon a renewed summary judgment motion, the court granted summary judgment on any remaining claims against Allstate and certified the order pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure.

Allstate moved for summary judgment, arguing that 1) a property insurer lacks control over a house repair contractor such as to hold the insurer liable under an agency theory; 2) there was no consideration for an alleged warranty; 3) an agreement to indemnify the tort of another must be in writing to be enforceable; and. 4) appellant did not rely on any misrepresentations made by Allstate.

In an opinion filed April 8, 1996, the circuit judge observed that appellant advanced three theories for recovery: 1) that Allstate was negligent in representing that England was bonded, insured, competent, and capable of doing the repairs properly; 2) that Allstate's actions of urging and directing her to engage England effectively rendered England Allstate's agent; and 3) that Allstate expressly warranted the quality of England's work and promised to stand behind England's work. The court considered appellant's third theory as an indemnity cause of action.

After noting that it did not read a misrepresentation allegation in appellant's complaint, the court found that Allstate failed to present any proof that England was not its agent. The court found that the claim representative's statements to appellant were less than clear or unequivocal such as to constitute a promise by Allstate to indemnify England. It then noted that the pleadings, appellant's affidavit, and the transcript failed to demonstrate that any consideration flowed to Allstate for any promise made by Allstate to indemnify England. The court granted Allstate's motion and dismissed the indemnification action. It then found that Allstate failed to present proof in opposition to appellant's negligence claim. Thus, the court granted Allstate's motion with respect to indemnification, but denied the motion with respect to agency and negligent misrepresentation.

Allstate renewed its motion for summary judgment and motion to dismiss on June 19, 1998, arguing that appellant failed to sufficiently state a cause of action for misrepresentation. It also asserted that England was not acting as its agent. As support for its position, Allstate presented appellant's recorded unsworn statement made shortly after the incident, appellant's amended complaint, and the April 8, 1996 order. Key portions of appellant's

unsworn, recorded statement regarding her conversation with All-state's claims representative are as follows:

A. And then he filled out all the paperwork and stuff and we visited and I said, you know, how my husband and I were separated at that time and so I was going to have to handle all this by myself. And I had had a lot of people tell me that you really can get ripped off by roofing companies, particularly when there's a lot of damage and they had had articles like that in Family Circle and Woman's Day saying that these crooks come in and say "Oh yeah, I'll do your roof for you for half-price" or whatever and take your money and never show up again. So anyway, he was saying — I was asking how do I protect myself against that? And he said, "Well, here are six companies that we are recommending that are reputable and we'll stand behind their work. If you're not sat. . . if their work isn't satisfactory, we'll make it good if they won't and we'll guarantee that their work is going to be satisfactory. If you choose not to use these people, that's fine. You can use whoever you want to use. But your first question, the same thing that everybody else had been telling me, "are these people bonded and insured?" And he said these people will be. But you don't have to use them."

Q. He just told you some people that were preferred maybe?

A. That Allstate recommended and would stand behind their work. But that it was completely up to me who I got to do the roof. But that, you know, "if you do get some other people, somebody else other than these people, you need to ask the first thing out of your mouth, are you bonded and insured? That's one of the ways to protect yourself." So anyway, it made sense to me to use somebody that they had recommended so anyway, I called all the people and Mr. England had the best estimate.

Q. Did he write them down for you or just verbally give them to you?

A. Yeah, he wrote them down for me. And not all of them responded, I don't really remember how many. I'd say four out of six or something, but Mr. England was the most reasonable. And I asked him "Are you bonded and insured?" Yes ma'm, yes ma'm." Anyway, it was shortly thereafter that . . .

Q. So you asked him that also?

A. Yes, I also asked. And he said yeah, he said that he would have some workers come out to the roof and he said "Now there are going to be some young guys, and I hope you're okay with that. A lot of people are real picky." My only concern was that they do a satisfactory job. And they came out and worked their little butts off.

In addition, appellee supplied the trial court with an affidavit by Jim England, in which he stated 1) that his company contracted with appellant to do roof repair; 2) that he was paid by appellant for the repair work; 3) that he did not receive any money directly from Allstate; 4) that Allstate did not provide any tools or supplies; 5) that he never intended to create an employer/employee relationship with Allstate; 6) that appellant had control over the details of the work; and 7) that Allstate did not pay the salaries of his workers.

After Allstate amended and substituted its renewed motion for summary judgment and motion to dismiss, appellant responded by affidavit, in which she stated 1) that the claims representative urged and directed her to use one of a list of persons to perform the roofing repairs; 2) that the agent expressly warranted and promised her that Jim England was bonded and insured; and 3) that she would not have used England if she had known that she could choose another repair person and/or that England did not have liability insurance.

Appellant later submitted a supplemental affidavit in which she stated 1) that the Allstate representative provided her with a list of what he represented were responsible and competent contractors; 2) that the representative said that she should use one of the six contractors on the list; 3) that the representative told her that if she did not use a name on the list, she needed to make sure who-

ever she hired was bonded and insured; 4) that if she used one of the names on the list, the repair would be "risk free"; 5) that if she used one of the names on the list that Allstate would pay any difference between the repair and the check Allstate gave her; 6) that if she hired a company on the list and there were any problems, "Allstate would make it good"; 7) that the representative expressly warranted that Jim England and his company were bonded and "fully insured"; 8) that the representative promised that England was a safe, competent, and reliable contractor; 9) that she would not have accepted Allstate's check or used England had she not relied on Allstate's representations; 10) that England repaired the roof and covered the exhaust to the main furnace that caused carbon monoxide to be trapped in her home; and 11) that immediately after she turned on the heater, she and her daughter were victims of carbon monoxide poisoning caused by the acts of Jim England.

On September 11, 1998, the court entered a second order, which addressed Allstate's renewed motion for summary judgment as to negligence. The court found that appellant's evidence was not sufficient to raise a fact question with respect to proximate cause. Thus, it granted Allstate's motion for summary judgment on the grounds of negligence.

Next, on May 2, 2001, the court issued a third order. In this order, the court found that 1) England was not an agent of Allstate in performing repairs to appellant's roof; 2) that there was no showing that the statements made by the claims representative were intended to deceive or were made with knowledge of the statements' falsity such as to demonstrate misrepresentation; 3) Allstate had no duty to appellant to determine the competency of England or to investigate his qualifications; and 4) the alleged misrepresentations made by the claims representative concerning the qualifications of England did not proximately cause appellant's loss. The court stated that it did not reach the issue of whether appellant relied on the representations or whether the representations proximately caused appellant's loss. It also reaffirmed the grant of summary judgment to Allstate regarding indemnity. The court also issued a Rule 54(b) certification, citing the reasons it

issued a final judgment with respect to Allstate. This appeal followed.

## Standard of Review

Our court recently outlined the procedure regarding summary judgment in *Regions Bank & Trust, N.A. v. Stone County Skilled Nursing Facility, Inc.*, 73 Ark. App. 17, 21, 38 S.W.3d 916, 919 (2001). There we stated as follows:

> The purpose of a summary judgment hearing is not to try the issues, but rather to determine if there are any issues to try. The trial court must consider all proof in favor of the non-moving party. Once the moving party proves there are no genuine issues, the burden shifts to the non-moving party to set out specific facts that demonstrate there are genuine issues of trial. On summary judgment appeal, we limit our review to the pleadings, affidavits, and other supporting documents filed by the parties in support of their arguments. We review all evidence in the light most favorable to the non-moving party, and only reverse the trial court when we determine that a material question of fact remains. We need only decide if the grant of summary judgment was appropriate, considering whether the evidentiary items presented by the moving party in support of the motion left a material question of fact not answered.

(Citations omitted.)

## Characterization of Claim as Indemnification

For her first point on appeal, appellant asserts that the trial court erroneously characterized her indemnity and express warranty claims solely as an indemnity claim. She contends that this improper characterization resulted in the trial court failing to make any ruling as to her express warranty claim and the improper dismissal of her breach of express warranty claim. We agree and hold that a genuine issue of fact exists as to whether Allstate's representations of England's workmanship were relied upon by appellant to her peril.

Appellant cites *Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996), as support for her contention that an express warranty

may relate to a service. After noting that an express warranty claim is analyzed based on contract law, the *Haase* court determined that the appellant did plead and offer proof of an express warranty, and that the appellant's complaint alleged that he relied on the misrepresentations. Thus, the court declined to affirm the summary judgment on the grounds that appellant failed to plead or prove that an express warranty existed. *See Haase v. Starnes, supra.*

When rendering its initial opinion in the present case, the trial court found that appellant alleged three causes of action: negligence, agency, and indemnity. However, in paragraph (4) of her amended complaint, appellant alleged as follows:

> [T]he Allstate Claims Representative provided the Defendant Jim England's name as a competent and responsible repairperson, and directed that Maggie use England (or others specifically set forth), and further represented to her that England would perform the job in a proper and competent manner. The Allstate agent further expressly warranted that England and/or Jim England was bonded and insured.

 Contrary to Allstate's position, appellant was not required to set out a separate count of express warranty in her complaint to prevail on a motion for summary judgment. Treating appellant's allegations as true for purposes of appellate review, the record demonstrates that Allstate expressly warranted that England was bonded and insured and that Allstate represented England as bonded, insured, competent, and capable to perform the repairs needed. Appellant followed the instructions of the claims representative and employed England to repair the roof. Taken as true, appellant's allegations that the claims representative affirmed that England did good work, that England was bonded and insured, and that Allstate would make good on England's work, establish a genuine issue of fact in regards to an express warranty. Given the relationship between Allstate and appellant as insurer and insured, a material issue of fact exists as to 1) whether the claims representative had reason to believe that appellant would rely on the information he gave her, and 2) whether the

representations made as to the quality of England's workmanship were relied on by appellant to her peril.

### Consideration to Support of Indemnity Agreement

Next, appellant contends that the trial court erred in holding that the indemnity agreement was not supported by consideration.

█ Indemnity arises by virtue of a contract, and holds one liable for the acts or omissions of another over whom he has no control. *See Pickens-Bond Const. Co. v. North Little Rock Electric Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970). Contracts of indemnity are construed in accordance with our rules for the construction of contracts generally. *See id.* Given the nature of indemnification, our courts have held that the language imposing indemnity must be clear, unequivocal, and certain. *See id.* For instance, in *Arkansas Kraft Corp. v. Boyed Sanders Construction Co.*, 298 Ark. 36, 39, 764 S.W.2d 452, 453 (1989), our supreme court interpreted an indemnity contract. The court noted as follows:

> [A] subcontractor's intention to obligate itself to indemnify a prime contractor for the prime contractor's own negligence must be expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed. While no particular words are required, the liability of an indemnitor for the negligence of an indemnitee is an extraordinary obligation to assume, and we will not impose it unless the purpose to do so is spelled out in unmistakable terms.

In the present case, the trial court found that a transcript of an interview between appellant and an Allstate agent was less than clear or unequivocal that what was said was a promise for Allstate to indemnify England for any tort that he might commit or that Allstate would make good any work that he failed to perform adequately. We disagree.

First, we note that during the transcribed conversation, appellant stated that the claims representative told her, "here are six companies that we are recommending that are reputable and we'll stand behind their work." She also stated that the represen-

tative remarked, "if their work isn't satisfactory, we'll make it good if they won't. . . ."

Appellant also provided a supplemental affidavit in which she alleged that the claims representative told her that if she used one of the persons on the list, it would be a "risk free" repair and that Allstate would "stand behind" the work of the contractors on the list. She further alleged that the representative stated that if there were any problems caused by the contractors on the list, Allstate would "make it good." However, if she did not hire a contractor on the list, Allstate would not guarantee that the work would be performed competently and safely. Appellant's affidavit demonstrates that the Allstate representative clearly stated in unequivocal terms a promise that Allstate would make good any work that England failed to perform adequately.

An oral undertaking to answer for the debt of another without any new consideration is a collateral understanding and not enforceable under the Statute of Frauds. *See Landmark Savings Bank v. Weaver-Bailey Contractors, Inc.*, 22 Ark. App. 258, 739 S.W.2d 166 (1987). However, an oral contract is considered original and enforceable when the agreement is based on new consideration or benefit moving to the promisor. When considering whether the undertaking is collateral or original, courts look to the words of the promise, the situation of the parties, and the circumstances surrounding the transaction. *See id.* The determination of whether an undertaking is collateral or original is one of fact. *See id.*

Consideration is any benefit conferred or agreed to be conferred upon a promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by a promisee other than that in which she is lawfully bound to suffer. *See id.* Additional consideration is required when parties of a contract enter into an additional contract. *See Crookham & Vessels, Inc. v. Larry Moyer Trucking*, 16 Ark. App. 214, 699 S.W.2d 414 (1985). When no benefit is received except that in which the obligee was entitled to under the original contract, and the other party to the contract leaves with nothing more than what he was already bound for, there is no new consideration for the additional con-

tract. *See id.* Mutual promises may constitute consideration, each for the other. While mutual promises will sustain a contract, there is no valid agreement if there is no promise by one party as a consideration for the other's promise. *See Kearney v. Shelter Ins. Co.*, 71 Ark. App. 302, 29 S.W.3d 747 (2000).

 The trial court in the present case found that neither the pleading, the affidavits, nor the transcript of appellant's conversation with an Allstate agent demonstrated that consideration flowed to Allstate for any promise Allstate allegedly made to appellant to be England's indemnitor. Appellant argues that the court's finding is incorrect because she offered an affidavit stating that in consideration for the additional indemnity agreement, she accepted Allstate's repair check and hired England without evidence of England's bonding, insurance, or written reference. The affidavit also stated that she would not have done so unless Allstate made the promises that it did. Appellant further contends that her supplemental affidavit asserts that Allstate received consideration in that she released Allstate based upon its agreement to indemnify England. Appellant also asserted in her supplemental affidavit that Allstate's claim representative told her that Allstate would pay the difference between the repair cost and the amount of the initial check if appellant used a roofing contractor on the list provided by the claims representative. Viewing the evidence in the light most favorable to appellant, appellant met proof with proof that a material fact question exists as to whether the language constituted a contract to indemnify and whether the language was supported by separate consideration.

*Duty*

Thirdly, appellant asserts that Allstate's action of providing appellant with a list and telling her that the list included competent contractors created a duty on behalf of Allstate to determine the competency of England or to investigate his qualifications. We hold that a genuine issue of material fact exists on this issue so as to preclude disposition by summary judgment.

 The issue of what duty is owed by one party to another is always a question of law and never one for the jury. *See*

*Heigle v. Miller,* 332 Ark. 315, 965 S.W.2d 116 (1998). When no duty of care is owed, a negligence cause of action is decided as a matter of law and an award of summary judgment is proper. *See Smith v. Hansen,* 323 Ark. 188, 914 S.W.2d 285 (1996). A party who gratuitously undertakes a duty can be liable for negligently performing that duty. *See Steward v. McDonald,* 330 Ark. 837, 958 S.W.2d 297 (1997).

According to the *Restatement (Second) of Torts* § 323 (1965):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Here, Allstate presented the court with proof that it issued appellant a check to repair a roof based on its insurance contract with appellant. It admits that it gave appellant a list that included the names of contractors who had satisfactorily performed roofing repairs for Allstate in the past. Allstate further admits that it took no steps to verify that England was bonded and insured. Appellant affirmed in her affidavits that Allstate's claims representative told her that the contractors on the list were competent, licensed, and bonded. While it is true that whether duty is owed is a question of law, Allstate's gratuitous undertaking to represent the competence, insured, and bonded status of contractors created a duty. We note that Allstate's action did not consist of simply supplying appellant with a list of roofing contractors. Again, treating appellant's allegations as true, Allstate's representative said that the contractors on the list were competent, bonded, and insured. Allstate's affirmation about the contractors listed created a duty on Allstate to exercise ordinary care to ensure that the information it communicated was true, i.e., that the roofing contractors were competent, bonded, and insured. Whether All-

state breached this duty is a question of fact that precluded the trial court's grant of a summary judgment.

### Proximate Causation

■ ■ To demonstrate a *prima facie* cause of action in tort, a plaintiff must establish that damages were sustained, that the defendant was negligent, and that the defendant's negligence was the proximate cause of the damages sustained. *See J.E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001). Proximate cause is "a cause which, in a natural and continued sequence, produces damage, and without which the damage would not have occurred." *See Baker v. Morrison*, 309 Ark. 457, 829 S.W.2d 421 (1992). Proximate cause is typically a fact question; however, when the evidence opposing the motion for summary judgment is insufficient to raise a question of fact, summary judgment is appropriate. *See Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998). Proximate cause may be shown by direct or circumstantial evidence if the facts proved are of such a nature and are so connected and related to each other that the conclusion may be inferred. *See id.*

In the present case, Allstate moved for summary judgment on the grounds that appellant failed to demonstrate that its alleged negligent recommendation of England was a proximate cause of her subsequent carbon monoxide incident. In response, appellant submitted a copy of Allstate's answers to interrogatories in which Allstate acknowledged that it made no determination regarding England's ability and did not have rules in place that governed the recommendation of roofers. Appellant also provided an affidavit in which she stated that she would not have used England if Allstate had not recommended him and promised to stand behind his work and that without Allstate's assurances, she would have asked England to provide verification that he was bonded and insured. The evidence establishes that a material fact question exists as to the existence of a causal connection between Allstate's alleged negligent recommendation of England and appellant's subsequent carbon monoxide incident. As noted by appellant, the issue of whether an independent, intervening cause exists due to the

alleged negligence of England is also a question for the trier of fact.

We reverse the award of summary judgment and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

JENNINGS and NEAL, JJ., agree.