2011 Ark. App. 347

**FOREVER GREEN ATHLETIC FIELDS, INC. d/b/a ProGreen, Keith Day, David Ripka, Progreen Sport Surfaces, LLC, and Raymond Fritz, Appellants/Cross–Appellees**

v.

**LASITER CONSTRUCTION, INC., Appellee/Cross–Appellant.**

No. CA 10–1049.

Court of Appeals of Arkansas.

May 11, 2011.

Rehearing Denied June 22, 2011.

---

Cade Lee Cox, David W. Sterling and David Grace, Northern Little Rock, AR, Jason Coley and Daniella Gordon, Philadelphia, PA, for appellant.

ROBERT J. GLADWIN, Judge.

Appellant Forever Green Athletic Fields, Inc. (Forever Green) and appellant Progreen Sport Surfaces, LLC (PSS) separately appeal the circuit court's June 4, 2008 order, which denied their motions for judgment notwithstanding the verdict but granted appellee/cross-appellant Lasiter Construction, Inc. (Lasiter Construction) a new trial on its breach-of-contract claims. Lasiter Construction cross-appeals the court's denial of a new trial on its third-party beneficiary claim and the denial of its motion for judgment notwithstanding the verdict. The parties raise a total of nine points on appeal and cross-appeal. We affirm on direct appeal, and we affirm on cross-appeal.

## Background

These parties became involved with one another in 2004, when Forever Green bid on several construction projects in Arkansas to supply and install ProGreen[1] synthetic grass football fields for the Batesville and Rogers School Districts, Pulaski Academy, Shiloh Christian School, and the University of Arkansas (collectively referred to as the "projects"). Forever Green was awarded the bid for the projects but subsequently learned it could not act as the contractor because it did not have a proper contractor's license. Lasiter Construction was awarded the bids, and it negotiated with Forever Green to obtain ProGreen materials for use on the projects.

In 2006, Forever Green sued Lasiter Construction for the unpaid balance of the materials it supplied. Lasiter Construction answered and counterclaimed for cost overruns that it contended Forever Green agreed to be responsible for and for claims it received by assignment from the University of Arkansas for problems it had with its synthetic fields. Lasiter Construction also filed a third-party complaint against appellant PSS and other third-party defendants contending that they were jointly and severally responsible as partners with Forever Green for Lasiter Construction's claims against Forever Green. PSS answered and counterclaimed against Lasiter Construction and filed a third-party complaint against Lasiter Construction's president, Michael Lasiter, claiming various tortious conduct for bringing PSS into the lawsuit. A seven-day trial was held and the issues were submitted to the jury on interrogatories, resulting in a judgment entered April 25, 2008, that denied all the claims and counterclaims of all the parties and awarded no damages. Motions were filed by the parties for judgment notwithstanding the verdict or, in the alternative, for a new trial. An order entered June 4, 2008, denied all motions for judgment notwithstanding the verdict but granted Lasiter Construction a new trial on its breach-of-contract claims. This appeal followed.

---

1. ProGreen is a trademark that multiple parties, including both Forever Green and PSS, have the right to use.

## I. *Arguments on Direct Appeal*

### A. New Trial

■ We first address the argument by both Forever Green and PSS that the circuit court erred in granting Lasiter Construction a new trial. We disagree.

In its counterclaim, as amended, Lasiter Construction alleged that Forever Green was responsible for the cost overruns associated with the projects. Forever Green defended on the basis that the alleged agreement that it would be responsible for cost overruns was unenforceable because of the statute of frauds. The statute of frauds, codified at Arkansas Code Annotated section 4–59–101(a)(2) (Repl.2001), provides in pertinent part:

> Unless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged, no action shall be brought to charge any ... [p]erson, upon any special promise, to answer for the debt, default, or miscarriage of another.

Ark.Code Ann. § 4–59–101(a)(2). Forever Green contends that an agreement for it to be responsible for cost overruns is within the statute of frauds because it is an agreement to answer for the debt, default, or miscarriage of another, in this case, the installation subcontractors.

Prior to giving the instructions on the statute of frauds, the circuit court expressed some concern over whether they were supported by the evidence. The court nevertheless gave the requested instructions as follows:

> The Statute of Frauds requires that certain contracts be in writing. Included in those contracts that must be in writing are promises to answer for the debt, default or miscarriage of another. In other words, if one is to guarantee the work of another, the contract must either be in writing or accompanied by some additional consideration, not included in the primary contract between the parties.
>
> If you find that Forever Green promised Lasiter to be responsible for cost overruns, then the Statute of Frauds may apply.
>
> An oral undertaking to answer for the debt of another without any new consideration is a collateral undertaking and not enforceable under the Statute of Frauds. However, an oral contract is considered original and enforceable when the agreement is based on new consideration or benefit moving to the promisor.
>
> When considering whether the undertaking is collateral or original, you should look to the words of the promise, the situation of the parties, and the circumstances surrounding the transaction. If you find that Forever Green promised to be responsible for cost overruns, you then must decide whether that promise was a collateral promise to the promise to supply the materials for the fields. If it was collateral, then you must decide whether Lasiter offered any additional consideration. If the promise was collateral, no consideration was conferred by Lasiter to Forever Green and there is no clear writing evincing the same, that promise is barred by the Statute of Frauds, and Forever Green cannot be bound by same.

Lasiter Construction objected to the giving of the statute-of-frauds instruction, contending that the statute of frauds did not apply because the agreement as to cost overruns was original to the agreement

and not collateral.[2] The court submitted two special interrogatories asking the jury to decide whether the terms of the agreement were as Lasiter Construction asserted and whether Forever Green's agreement to be responsible for cost overruns was barred by the statute of frauds. The jury answered both interrogatories in the affirmative.[3] Lasiter Construction filed a motion for judgment notwithstanding the verdict or, alternatively, a motion for new trial. The circuit court found that there was insufficient evidence to establish that the agreement as to the cost overruns was collateral to the original agreement and granted the motion for a new trial based on Arkansas Rule of Civil Procedure 59(a)(8).

■■■ A Rule 59(a)(8) motion may be used to determine if it was an error of law in giving instructions to the jury. *See Coca–Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997). In reviewing the circuit court's grant of a motion for new trial, the test is whether the circuit court abused its discretion. *Carlew v. Wright*, 356 Ark. 208, 148 S.W.3d 237 (2004). A showing of abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id.* Abuse of discretion in granting a new trial means a discretion improvidently exercised, *i.e.*, exercised without due consideration. *Razorback Cab of Fort Smith, Inc. v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993).

■ The real issue before us is not whether Forever Green agreed to answer for the debt or default of the installation subcontractors, but whether it is being sued upon its own obligation outside of the statute of frauds. Our courts have long recognized that a promise is not within the statute of frauds where the main purpose of the promissor was to serve some purpose of his own, even though the effect is to be responsible for the debt of another. *See Oil City Iron Works v. Bradley*, 171 Ark. 45, 283 S.W. 362 (1926); *S.R.H. Robinson & Son Contracting Co. v. Twin City Bank*, 103 Ark. 219, 146 S.W. 523 (1912); *Gale v. Harp*, 64 Ark. 462, 43 S.W. 144 (1897); *Chapline v. Atkinson, Co.*, 45 Ark. 67 (1885).

■■ Forever Green and PSS rely on Michael Lasiter's testimony that the agreement between Lasiter Construction and Forever Green "morphed" over time and was, therefore, a forbidden modification of an agreement required to be in writing. However, that presupposes that the agreement was required to be in writing in the first instance. They also stress the fact that the contract between Lasiter Construction and the installation subcontractor was not entered into until after the agreement between Forever Green and Lasiter Construction was made to argue that the agreement on cost overruns was collateral to the original agreement and, therefore, within the statute of frauds. However, Lasiter's testimony actually supports the argument that the cost-overrun provision was part of the original agreement and not for the primary benefit of

---

**2.** In its arguments to the circuit court on the instruction, Lasiter Construction also incorporated its arguments made in response to the motion in limine that the statute of frauds did not apply because the agreement was taken out of the reach of the statute by partial performance and because there was a writing that satisfied the statute of frauds.

**3.** The court also submitted a third interrogatory that preceded the other two interrogatories and asked whether the terms of the agreement were as alleged by Forever Green. The jury unanimously answered in the negative.

the installation subcontractor, because the evidence shows Forever Green wanted a presence in Arkansas and could not establish that presence without having a contractor's license. Lasiter Construction knew that Forever Green could not do the installation on these projects itself and offered to serve as project manager for a fee if Forever Green would be responsible for all cost overruns, thereby reducing the risk to Lasiter Construction. Forever Green was also to recommend qualified installation subcontractors. Lasiter Construction later hired one subcontractor recommended by Forever Green. The determination of whether an undertaking to answer for the debt of another is collateral or original is one of fact. *Capel v. Allstate Ins. Co.*, 78 Ark.App. 27, 77 S.W.3d 533 (2002). When considering whether the undertaking is collateral or original, courts look to the words of the promise, the situation of the parties, and the circumstances surrounding the transaction. *Id.; see also E.P. Dobson, Inc. v. Richard*, 17 Ark.App. 155, 705 S.W.2d 893 (1986).

As noted earlier, the circuit court was concerned about whether there was evidence to support the instructions on the statute of frauds. After the jury returned its answers to the interrogatories, the court considered the arguments in Lasiter Construction's motion for new trial, found that there was not sufficient evidence to support the giving of the instruction, and ordered a new trial on Lasiter Construction's breach-of-contract claims. We cannot say that, in so doing, the circuit court acted improvidently or without due regard. In other words, PSS and Forever Green have failed to demonstrate that the circuit court abused its discretion, and their arguments on this point thus fail.

⬛ |₈Moreover, we are further convinced that the circuit court did not abuse its discretion in granting a new trial because the jury's answers to interrogatories two and eight were inconsistent. In interrogatory two, the jury was asked to determine whether the contract was as alleged by Lasiter Construction. The jury answered in the affirmative. In interrogatory eight, the jury was asked whether Forever Green's agreement to be responsible for cost overruns was barred by the statute of frauds. The jury answered in the affirmative. The ultimate test of inconsistency is whether the conflict is such that one answer would require a verdict for the plaintiffs and the other a verdict for the defendants. *Russell v. Pryor*, 264 Ark. 45, 568 S.W.2d 918 (1978). Under this test, the jury's finding that the contract was as asserted by Lasiter Construction necessarily included a determination that the agreement as to the cost overruns was original and not collateral, while the finding that the agreement was barred by the statute of frauds was a determination that the agreement as to the cost overruns was collateral. There is simply no way to reconcile the answers to these interrogatories.

### B. Denial of Motion for Judgment Notwithstanding the Verdict

⬛ PSS and Forever Green next argue that the circuit court erred in denying their motion for judgment notwithstanding the verdict because of Lasiter Construction's violation of the Arkansas Contractor's Licensing Law.[4] A motion for judgment notwithstanding the verdict allows the court to reconsider all other questions of law raised during trial. *Willson*

---

4. Forever Green and PSS also moved for summary judgment on this issue, which was denied by the circuit court. They also argue the point on appeal. The denial of a motion

for summary judgment is neither reviewable nor appealable, even after there has been a trial on the merits. *Bull Motor Co. v. Murphy*, 101 Ark.App. 33, 270 S.W.3d 350 (2007).

*Safety Prods. v. Eschenbrenner,* 302 Ark. 228, 788 S.W.2d 729 (1990). This issue involves the application of the Contractor's Licensing Law. The question of the correct interpretation and application of an Arkansas statute is a question of law, which we decide de novo. *Cooper Realty Invs., Inc. v. Arkansas Contrs. Licensing Bd.,* 355 Ark. 156, 134 S.W.3d 1 (2003).

In this point, both Forever Green and PSS contend that Lasiter Construction's claims against them were barred as a matter of law because of Lasiter Construction's failure to comply with portions of the Contractor's Licensing Law, specifically Ark.Code Ann. §§ 17–25–101 and 17–25–103. According to PSS and Forever Green, the violation occurred when Lasiter Construction required Forever Green to supervise the installation of the surfaces for the projects without Forever Green having a contractor's license. Section 17–25–101(a)(1) defines a "contractor" as

> any . . . corporation, . . . that, for a fixed price, . . . contracts or undertakes to construct, . . . or assumes charge in a supervisory capacity or otherwise, or manages the construction . . . or any other improvement or structure on public or private property for lease, rent, resale, public access, or similar purpose, . . . when the cost of the work to be done, or done, in the State of Arkansas by the contractor, . . . is twenty thousand dollars ($20,000) or more.

Ark.Code Ann. § 17–25–101(a)(1) (Repl. 2010). PSS and Forever Green argue that Lasiter Construction's actions violated the definition of a contractor and its counterclaim was barred as a matter of law by Ark.Code Ann. § 17–25–103. That section provides as follows:

> (a) Any contractor shall be deemed guilty of a misdemeanor and shall be liable to a fine of not less than one hundred dollars ($100) nor more than two hundred dollars ($200) for each offense, with each day to constitute a separate offense, who:
>
> (1)(A) For a fixed price, . . . assumes charge in a supervisory capacity or otherwise, or manages the construction, . . . or any other improvement or structure, when the cost of the work to be done, or done, in the State of Arkansas by the contractor, including, but not limited to, labor and materials, is twenty thousand dollars ($20,000) or more, without first having procured a license with the proper classification to engage in the business of contracting in this state.
>
> . . . .
>
> (d) No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this chapter. No action may be brought either at law or in equity for quantum meruit by any contractor in violation of this chapter.

Ark.Code Ann. § 17–25–103(a)(1)(A), (d) (Repl.2010). The provisions of section 17–25–103(d) are punitive in nature and must be strictly construed so that, if a provision is not clear and positive, every doubt as to its construction must be resolved in favor of the one against whom the enactment is sought to be applied. *Meadow Lake Farms, Inc. v. Cooper,* 360 Ark. 164, 200 S.W.3d 399 (2004).

The Contractor's Licensing Law does not bar Lasiter Construction's counterclaim. The purpose behind the Contractor's Licensing Law is to require contractors who desire to engage in particular types of construction work to meet standards of responsibility such as experience, ability, and financial condition. *Brimer v. Arkansas Contractors Licensing Bd.,* 312 Ark. 401, 849 S.W.2d 948 (1993). This is made clear in section 17–25–103(a)(2) through (a)(5), where it clearly prohibits an unlicensed contractor from presenting

or filing the license certificate of another; giving false or forged evidence in order to obtain its license; impersonating another; or using an expired or revoked license. It is undisputed that Lasiter Construction has a valid contractor's license. It is also undisputed that Lasiter Construction was not attempting to do any of the activities prohibited by section 17–25–103(a)(2) through (a)(5). Therefore, section 17–25–103(d) does not apply to bar Lasiter Construction's claims against Forever Green or PSS.

### C. Denial of Motion for Directed Verdict

 Next, PSS alone argues that the circuit court erred in denying its motion for a directed verdict concerning whether it and Forever Green were operating as a partnership or other joint venture and in denying its motion in limine to prevent Lasiter Construction from making collective reference to Forever Green and PSS as "Progreen."

As noted earlier, the name "ProGreen" was a trademark that multiple parties, including both Forever Green and PSS, had the right to use. Lasiter Construction sought to recover from Forever Green and PSS based on a theory that they were a partnership or other form of joint venture. David Ripka, the former vice president of Forever Green, testified that there was a partnership between PSS and Forever Green and that this partnership was in effect at the time the contracts for the projects were bid. Ripka explained that there were so many "ProGreens" and that Forever Green also used the name "Pro-Green Sport Technologies." He further said that the use of the name "ProGreen" was because Forever Green was going to buy the assets of PSS. However, the sale was never consummated. Ripka also explained that Forever Green never took the name "ProGreen" for their company, but he did use "ProGreen" in referring to his company as part of a marketing campaign. Keith Day, the president of Forever Green, also testified that there was a partnership between PSS and Forever Green from early 2004 until sometime in 2005. Charlie Dawson, Forever Green's former director of field operations and the person responsible for the agreement between Forever Green and Lasiter Construction, had also submitted correspondence and bid proposals that referred to Forever Green as "ProGreen." There was also evidence to the contrary in the form of Dawson's testimony that there was no partnership between Forever Green and PSS with respect to the sale of the fields in 2004.

 The question of whether a partnership existed is one of fact. *See Gammill v. Gammill,* 256 Ark. 671, 510 S.W.2d 66 (1974). The circuit court did not err in refusing PSS's motion for a directed verdict. *Wal–Mart Stores, Inc. v. Tucker,* 353 Ark. 730, 120 S.W.3d 61 (2003). We need not separately discuss PSS's argument concerning its motion in limine.

### D. Attorney Disqualification

 In this point, PSS argues that the circuit court erred in failing to disqualify Lasiter Construction's attorney and his entire firm. We will affirm a circuit court's order that denies a motion to disqualify an attorney unless it is shown that the court abused its discretion. *Smith v. Campbell,* 71 Ark.App. 23, 26 S.W.3d 139 (2000).

In December 2007, PSS notified attorney Richard Newland, the lead attorney for Lasiter Construction, that it expected to call him as a material witness in the upcoming trial. On March 19, 2008, Forever Green filed its motion seeking to disqualify Newland and his entire firm from representing Lasiter Construction at trial.

PSS filed a similar motion on March 21, 2008. In its brief in support of the motion, PSS argued that Newland's testimony was central to the issues of whether there was a violation of the Contractor's Licensing Law, whether Forever Green was to serve merely as a material supplier or an installer of the artificial surfaces, and whether there was a partnership or joint venture between PSS and Forever Green. PSS also argued that any disqualification of Newland would not result in any undue hardship to Lasiter Construction.

On March 27, 2008, the circuit court held a hearing on the motion and on Lasiter Construction's motion to quash a subpoena issued to Newland. The court ruled from the bench and denied the motion to quash the subpoena, finding that Newland was a material witness. The court also denied the motions to disqualify Newland based on the substantial hardship a disqualification would work on Lasiter Construction. Newland later testified at trial concerning his communication with the Arkansas Contractor's Licensing Board and on the terms of the agreement between Forever Green and Lasiter Construction.

Rule 3.7 of the Model Rules of Professional Conduct provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. The rule allows for exceptions where the testimony relates to an uncontested issue or to the nature and value of legal services rendered in the case, or where the disqualification would work substantial hardship on the client. The fact that an attorney has served as both witness and advocate in the same action does not require automatic reversal. *Smith v. Wharton*, 349 Ark. 351, 78 S.W.3d 79 (2002); *McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990). The supreme court has also noted that the rule against the attorney who

becomes a witness continuing as an advocate was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him. *McCoy Farms, Inc. v. J & M McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978). However, based on the circuit court's finding that Newland was a material witness, we cannot say that either PSS or Forever Green was attempting to call Newland as a ploy to disqualify him and his firm.

In the present case, the circuit court denied the motion to disqualify Newland based upon the hardship it would cause Lasiter Construction. The motion was denied at a hearing held just four days prior to trial. Undoubtedly at that late date, disqualification would have worked a great injustice on Lasiter Construction and forced a lengthy postponement of the trial. Therefore, we conclude that the circuit court did not abuse its discretion in denying the motion to disqualify Newland and his entire firm.

Although we hold that the circuit court did not abuse its discretion in denying the motions to disqualify Newland and his entire firm, we note that, on remand, a hardship will no longer exist. Rule 1.10(a) of the Model Rules provides,

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9 or 3.7, unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Under this rule, if Newland is barred from representing Lasiter Construction, then the same bar is imputed to all lawyers who are associated with him in the same firm. *See Norman v. Norman*, 333 Ark. 644, 970

S.W.2d 270 (1998). The time constraints that led the circuit court to conclude that the disqualification would work a hardship on Lasiter Construction will not be present on remand, and Lasiter Construction will have time to obtain new counsel prior to retrial.

E. Dismissal of Tort Claims

Finally, PSS makes a multi-part argument that the circuit court erred in dismissing its various tort claims against Lasiter Construction and Michael Lasiter for bringing PSS into this suit.

On January 30, 2007, Lasiter Construction filed its third-party complaint against PSS, and PSS responded by filing an answer and counterclaim on April 23, 2007. PSS also asserted a third-party complaint against Michael Lasiter. PSS asserted that Lasiter Construction acted in bad faith in filing its third-party complaint against PSS because it knew that PSS was not connected with Forever Green or the installation subcontractors. The third-party complaint against Michael Lasiter sought to pierce the corporate veil and hold Michael Lasiter personally responsible for the torts of Lasiter Construction.

Michael Lasiter filed a motion to dismiss the third-party complaint against him on the basis that it failed to state facts upon which relief could be granted. The motion asserted that PSS's third-party complaint only alleged conclusions as to why the corporate veil should be pierced. Lasiter Construction filed a separate motion seeking to dismiss PSS's counterclaim, also on the basis that it failed to state facts upon which relief could be granted.

After a hearing on both motions, the circuit court ruled from the bench and granted Lasiter Construction's motion as to the deceit and fraud, tortious interference, and Arkansas Deceptive Trade Practices Act counts. The court granted Michael Lasiter's motion, finding that "that cause of action is [not] necessary or proper." The court denied Lasiter Construction's motion as to the malicious prosecution and abuse-of-process counts.

On February 22, 2008, Lasiter Construction filed a motion for summary judgment as to PSS's claims of malicious prosecution and abuse of process. In its supporting brief, Lasiter Construction argued that it had a good-faith basis for asserting that PSS and Forever Green were jointly and severally liable for Lasiter Construction's damages and that PSS had failed to prove an essential element of its claim, namely, that the proceedings instituted by Lasiter Construction had been terminated in PSS's favor. PSS filed a response in which it asserted that the motion was untimely under Ark. R. Civ. P. 56 and the circuit court's scheduling order. The court granted Lasiter Construction's motion as to PSS's claims for malicious prosecution and abuse of process.

### 1. *Malicious Prosecution*

 PSS first argues that the circuit court erred in granting summary judgment in favor of Lasiter Construction on PSS's claim for malicious prosecution against Lasiter Construction.[5] We disagree.

In *Farm Service Cooperative, Inc. v. Goshen Farms, Inc.*, 267 Ark. 324, 590 S.W.2d 861 (1979), the supreme court held that there was no basis for the filing of a counterclaim for malicious prosecution in the same action that was alleged to have been the basis of the malicious prosecu-

---

5. PSS does not separately argue its abuse-of-process claim in its brief. An argument not raised by the appellant in his brief cannot be considered by this court on appeal. *Vickers v. Freyer,* 41 Ark.App. 122, 850 S.W.2d 10 (1993).

tion. The court stated that, in such a situation, the first action had not been terminated in favor of the plaintiff in the malicious-prosecution action and, therefore, an [17] essential element of the cause of action for malicious prosecution was missing. 267 Ark. at 334–35, 590 S.W.2d at 867. Because the malicious-prosecution action was prematurely brought, summary judgment for the defending party was proper. 267 Ark. at 335, 590 S.W.2d at 867. PSS asserts that it should have been allowed to prove at trial that the proceedings were concluded in its favor and that there was no law that prevented the initiation of a cause of action based upon elements expected to be proved at trial. However, PSS cites no authority for this proposition. Moreover, it is contrary to the holding in *Farm Service*. Therefore, summary judgment was proper on PSS's malicious-prosecution claim.

### 2. *Arkansas Deceptive Trade Practices Act and Tortious Interference Claims*

■■■■ PSS next argues that the circuit court erred in dismissing its claim under the Arkansas Deceptive Trade Practices Act and its claim for tortious interference with a contract or business expectancy. We review a circuit court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. *Biedenharn v. Thicksten,* 361 Ark. 438, 206 S.W.3d 837 (2005). In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in plaintiff's favor. *Id.* Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.* (citing Ark. R. Civ. P. 8(a)(1)).

■■■ The Arkansas Deceptive Trade Practices Act provides a private right of action to "any person" who suffers actual damage or injury as a result of a violation of the Act. *See* Ark.Code Ann. § 4–88–113(f). The Act prohibits a variety of listed practices, including "[k]nowingly making a false representation as to the ... sponsorship ... of goods or services" and a catchall provision prohibiting "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark.Code Ann. § 4–88–107(a)(1), (a)(10). The elements of such a cause of action are (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act. *See* Ark.Code Ann. § 4–88–113(f). A private cause of action does not arise absent a showing of both violation and resultant damages. *Wallis v. Ford Motor Co.,* 362 Ark. 317, 208 S.W.3d 153 (2005). PSS's counterclaim fails to assert that Lasiter Construction engaged in any type of consumer-oriented act or practice that caused damage to PSS. Instead, PSS alleges that Lasiter Construction made "false representations as to its services and business activities and engaged in unconscionable, false, or deceptive acts or practices" and that Lasiter Construction's actions "constitute fraud and are deceptive and unconscionable as defined in the Arkansas Deceptive Trade Practices Act." However, PSS never explains what the false representations were or what acts Lasiter Construction engaged in that violated the Deceptive Trade Practices Act. Nor does PSS explain how it was damaged by Lasiter Construction's actions. Based on the language of section 4–88–113(f), there must be a causal connection between the violation of the Deceptive Trade Practices Act and the injury. Because PSS failed to allege facts setting forth a cause of action for violation of the Deceptive Trade Practices Act, the circuit court properly dismissed PSS's claim under the Act.

We next turn to that part of PSS's argument in which it contends that the circuit court erred in dismissing its claim for tortious interference with a contract or a business expectancy. Under Arkansas law, in order to state a claim for tortious interference, PSS must allege (1) the existence of a valid contract or a business expectancy; (2) Lasiter Construction's knowledge of that contract or expectancy; (3) intentional interference inducing or causing termination of the contract or expectancy; and (4) resultant damage to PSS. *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001); *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997). Some precise business expectancy or contractual relationship must be obstructed in order to commit the tort of interference with a business expectancy. *Stewart Title Guar. Co. v. American Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005). In the present case, there are no facts alleged demonstrating that PSS had a valid contractual relationship or business expectancy that Lasiter Construction interfered with, or that it was damaged by Lasiter Construction's alleged actions. Instead, the allegations were that Lasiter Construction's actions damaged its reputation and interfered with PSS's ability to contract in the state of Arkansas or elsewhere. These allegations are nothing more than a general desire to be able to contract in the state of Arkansas and, as such, do not show a specific relationship or expectancy with which Lasiter Construction interfered. Therefore, the circuit court did not err in granting the motion to dismiss PSS's tortious-interference claim.

### 3. *Piercing the Corporate Veil*

Finally under this point, PSS argues that the circuit court erred in dismissing its third-party complaint against Michael Lasiter.

The doctrine of piercing the corporate veil is an equitable remedy; it is not itself a cause of action; rather, it is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract. *See* William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations*, § 41.28 (2006); *Winchel v. Craig*, 55 Ark.App. 373, 383, 934 S.W.2d 946, 951 (1996) (Rogers, J., dissenting); *Gass v. Anna Hosp. Corp.*, 392 Ill.App.3d 179, 331 Ill.Dec. 854, 911 N.E.2d 1084 (2009). A separate cause of action to pierce the corporate veil does not exist independent from the claims asserted against the corporation. *Morris v. New York State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993); *Drury Dev. Corp. v. Foundation Ins. Co.*, 380 S.C. 97, 668 S.E.2d 798 (2008). In other words, without a proper claim for corporate liability, the issue of disregarding the corporate entity simply does not arise. Because we affirm the summary judgment on the malicious prosecution and the dismissal of the tortious-interference and Deceptive Trade Practices Act claims, there are no underlying claims against the corporation to provide a basis for piercing the corporate veil and imposing personal liability on Michael Lasiter.

### II. *Arguments on Cross–Appeal*

### A. Third–Party–Beneficiary Claims

Lasiter Construction first argues that the order granting it a new trial on its breach-of-contract claims should be expanded to include the third-party-beneficiary claims that were assigned to it. According to the circuit court's order granting Lasiter Construction's motion for new trial, the new trial was granted to the claims based on breach of contract. The third-party-beneficiary claims are

clearly based on breach of contract and are therefore included in the new trial.

## B. Breach–of–Warranty Claims

 Lasiter Construction next argues that the circuit court erred in denying its motion for judgment notwithstanding the verdict or, in the alternative, a new trial on the breach-of-warranty[21] claims assigned to it. The jury was instructed as to the elements of a breach-of-warranty claim and included both express and implied warranties. An interrogatory was submitted to the jury asking it to determine whether Forever Green breached any warranties. Ten members of the jury answered in the negative. The jury was also asked to determine what damages Lasiter Construction suffered as a result of Forever Green's breach of any warranties. The jury unanimously determined "$0."

In its argument, Lasiter Construction relies on two warranties that Forever Green made concerning its product. The first is that the product was impervious to water.

Dave Ripka testified that he was not aware that Lasiter Construction was claiming that Forever Green's product was represented to them as impervious to water. He was aware that the University of Arkansas claimed that representations had been made to it that the product was impervious to water. Ripka asserted that the individual product sheets were impervious to water, but added that the seams between the sheets were not necessarily impervious to water. He said that the installation subcontractor installed the product using spikes. He had also testified that the product manufacturer suggested using mechanical hook tape on all seams. Ripka added that the use of the spikes would only minutely affect the product where the nail had been but that water could still collect underneath the surface.

Keith Day, the president of Forever Green, similarly testified that, although the individual product sheets were impervious to water, the seams between the 250 to 300 sheets that are used on a field are not necessarily impervious to water.

The jury had been instructed that the failure to conform must proximately cause Lasiter Construction's damages. Lasiter Construction suggests that Forever Green was responsible for the installation subcontractor using nails and spikes for the installation. However, Ripka testified that the subcontractor's use of the spikes was different from the installation method suggested by the manufacturer. From this, the jury could have determined that any problem with the field was the result of the subcontractor using spikes instead of following the manufacturer's suggested method.

 The second warranty involved whether Forever Green warranted its product to be a shock-attenuation pad. There was conflicting testimony on this point. For example, Charlie Dawson testified that he had discussions with Jerry Pufall of the University of Arkansas that its product was a shock-attenuation pad, even though such a pad would not be needed on an outdoor field. Dave Ripka said that the drainage blanket had "proven to be [a] shock-attenuation pad." He also said on cross-examination that the product was not designed to be a shock attenuation pad as would a gym mat but that it would help to absorb shock. As to any conflicting evidence presented in this case, it is up to the jury to resolve the conflicts in the testimony and judge the weight and credibility of the evidence. *Cadillac Cowboy, Inc. v. Jackson,* 347 Ark. 963, 69 S.W.3d 383 (2002). Accordingly, we affirm the trial court's denial of Lasiter Construction's motion for judgment notwithstand-

ing the verdict and, alternatively, the denial of the motion for new trial, on the breach-of-warranty claims.

### C. Jury Instruction

Because we affirm the circuit court's grant of a new trial on the contract claim, we need not address Lasiter Construction's third point where it argues that the circuit court erred in submitting a statute-of-frauds instruction to the jury.

### D. Findings of Fact on Remand

Finally, Lasiter Construction argues that, on remand, it is entitled to the benefit of certain findings of fact that the jury made by answering special interrogatories in Lasiter Construction's favor.

At trial, the jury answered interrogatories in which it found that the contract was as alleged by Lasiter Construction, that Forever Green breached that contract, and that the agreement did not violate the Arkansas Contractor's Licensing Law. For the retrial on its breach-of-contract claims, Lasiter Construction asks that the parties be bound by the determinations that the contract was as alleged by Lasiter Construction and that the contract did not violate the Arkansas Contractor's Licensing Law because the jury's answers to the special interrogatories constitute separate verdicts and, therefore, it is possible to have a retrial only on the issue of whether the contract has been breached and the amount, if any, of its damages. It cites two federal appellate decisions, *Robertson Oil Co. v. Phillips Petroleum Co.*, 930 F.2d 1342 (8th Cir.1991) and *Green v. American Tobacco Co.*, 325 F.2d 673 (5th Cir.1963), in support of its argument. The cases are inapposite.

In Arkansas, the long-standing rule is that when a judgment is reversed or set aside by the court that issued it, the rights of the parties are immediately re-stored to the same condition in which they were before its rendition; and the judgment is said to be mere waste paper. *Palmer v. Carden*, 239 Ark. 336, 389 S.W.2d 428 (1965); *Holt v. Gregory*, 222 Ark. 610, 260 S.W.2d 459 (1953); *Harrison v. Trader*, 29 Ark. 85 (1874). Because the rights of the parties are as if no trial had occurred, there are no jury interrogatories finding in Lasiter Construction's favor that would be binding in a second trial. Lasiter Construction's request attempts to relieve it of the burden of proving all of the elements of its cause of action for a breach-of-contract claim. *See* AMI Civ. 2401 (setting forth that, in breach-of-contract case, the plaintiff must prove, among other things, that the parties entered into a contract, that the contract required the defendant to perform in a certain manner, and that the defendant did not do as the contract required of him). This necessarily includes the terms of that contract if those terms are, as here, disputed.

Affirmed on direct appeal; affirmed on cross-appeal.

VAUGHT, C.J., and HOOFMAN, J., agree.